MARY H. HARDIMAN, *Adm'x v.* WALSH BROTHERS.

*Hughes & Burns* and *Donald R. Bryant* (*Mr. Bryant* orally), for the plaintiff.

*Varney, Levy & Winton* (*Mr. Winton* orally), for the defendant.

DUNCAN, J. One of the plaintiff's major contentions relates to the instructions to the jury dealing with the defense of negligence of a fellow servant. This defense assumed added importance because of inquiries made by the jury during their deliberations: "Was the elevator . . . operator to be considered a servant of the Walsh Brothers?", and "Is the Walsh Company liable if we agree that the elevator . . . operator was due to his carelessness responsible for the accident?" The Court replied to the first question in the affirmative, and answered the second by repeating the substance of the original charge upon the subject of the fellow servant doctrine.

. Specifically the plaintiff contends that the Court erred in denying two of her requests for instructions. One of these would have informed the jury that it was entitled to find "no [causal] negligence on the part of any fellow servant of the decedent who was engaged in performing an act of service for the defendant." The other sought the following instructions: "If you find that fellow employees of the decedent were negligent, and that this negligence caused the injury of the decedent, and you also find that these fellow employees were not engaged in the same general process of production in which the decedent was engaged, then the defendant is responsible for the negligence of these fellow employees and for the injuries to the decedent."

The argument in support of the exceptions to denial of these requests stresses the proposition that the evidence warranted a finding that the elevator operator and the decedent were not engaged in the "same general process of production," and that in operating the elevator the former was performing a non-delegable duty of the master, for negligence in the performance of which the master would be liable. Reliance is placed upon cases such as *Moore* v. *Company*, 89 N. H. 332, where it was held that a millwright and electrician engaged in removing a piece of machinery was not a fellow servant of the plaintiff, a shoe repairer working on the floor below, who was

struck by a cable connecting with the machine. Stress was there laid upon the fact that the plaintiff's work was "primarily in production," while the electrician "had nothing directly to do with production." The plaintiff also points out that the instructions to the jury gave it no standard by which to determine whether or not an employee is a fellow servant.

In our opinion, the issue is controlled by principles established in *Galvin* v. *Pierce*, 72 N. H. 79, rather than by the holding of the *Moore* case. No claim is made of any defect in the elevator itself. Under proper operation, it was a safe work place, furnished by the master. The danger arose from operation of the elevator, and the method of conducting the work in which it served as a tool. As was said in the *Galvin* case *supra:* "The sole question presented by this branch of the case . . . is, whether the operation of the crane was work which might be committed to a servant; or whether its safe operation was a nondelegable duty of the master . . . of which he could not divest himself by employing another to perform it." The conclusion there reached is controlling here. The operator of the elevator was engaged with the decedent in the process of transferring stone from the ground to the scaffold. "It is elementary that the master's duty does not extend to the operation of suitable machinery furnished by him to his servants. . . . In this case the loading of the stone into the car by means of the derrick was the common employment in which the parties were engaged." *Id.*, 82.

"When the danger arises not from the place itself, but from the use of it for the work, and no special skill or experience beyond that involved in doing the work is required to maintain the safety of the place, the maintenance of such safety is the duty of the servant because it is a part of the work. The plaintiff cannot recover on the ground of the breach of the master's obligation as to the place, because there is no evidence of negligence of the master in that respect." *McLaine* v. *Company*, 71 N. H. 294, 296.

According to the evidence in this case, the work which was performed by the operator of the elevator was no more than the operation of machinery furnished by the master, and required for the maintenance of safety no special skill beyond the skill involved in doing the work. It follows that all of the employees engaged in the operations which resulted in the accident were fellow employees of the decedent, and there was no error in denying the plaintiff's requests which were designed to draw a distinction between servants "engaged in performing an act of service for the defendant" and those "not

engaged in the same general process of production in which the decedent was engaged."

Another exception relied upon by the plaintiff relates to the issue of assumption of the risk. There was evidence that a bell or buzzer system could have been used in lieu of hand signals for signaling the operator of the elevator, and that a bell system was in fact installed after the accident occurred. There was also evidence that the defendant's superintendent at some time prior to the accident told certain employees that such a system would be installed.

The plaintiff requested an instruction to the jury that "the decedent did not assume the risk of working upon an unsafe elevator," if he "reasonably relied upon the statement . . . that the elevator would be improved by the installation of a bell system . . . ." There was no error in denying this request. While there was evidence of a statement by the superintendent that a bell would be installed, there is no evidence that the decedent attached any significance to its absence or placed any reliance upon any promise to install it as an inducement to continue upon the job. In this state of the evidence, it would have been error to submit the issue to the jury. *Bodwell* v. *Company*, 70 N. H. 390; *Roy* v. *Hodge*, 74 N. H. 190. *Cf. Shurkus* v. *Company*, 83 N. H. 43; *Nason* v. *Company*, 92 N. H. 251, 255.

By another request the plaintiff sought to have the jury instructed that the defendant had the "duty" of proving that the decedent was contributorily negligent. The request was not granted, nor was there any instruction upon the burden of proof of contributory negligence. See R. L., c. 384, s. 13. The defendant asserts that contributory negligence was not an issue, and that it was not submitted to the jury. The record appears to support the defendant in its contention. There was no evidence from which it could be found that any conduct of the decedent, other than the performance of his work in the manner in which he was expected to perform it, contributed to his injury. Nor was contributory negligence discussed in the charge. The plaintiff points to a statement in the charge that "It was the legal obligation of all the workmen including Mr. Hardiman to use ordinary care to avoid getting hurt," to indicate that the issue was submitted. This instruction was followed by the instruction that "A workman . . . if he knows . . . of any defect . . . and appreciates the danger to be encountered . . . is precluded from recovery for any injury sustained by reason of this defect." There followed further instructions expressly dealing with the "doctrine . . . known as assumption of risk." The jury was at no time instructed to determine the issue of the

plaintiff's care, as distinguished from his assumption of the risk, nor was it instructed that his failure to exercise due care precluded a verdict in his favor.

In answer to the questions posed by the jury during its deliberations, the Court said at one point that "the plaintiff can recover provided he was free from fault, did not assume the risk, the ordinary risk incident to the type of employment in which he was engaged." If the word "fault" is at times used as a synonym of negligence, there is no reason to suppose that the jury took it in this sense in the context in which it was here used. The natural inference would be either that "free from fault" was synonymous with "did not assume the risk," or, depending upon the method of delivery, corrected by substitution of the latter phrase. While an unfortunate choice of language is apparent, the instructions as a whole had no tendency to give the jury to understand that it was called upon to decide any issue pertaining to the plaintiff's conduct except that of his assumption of the risk. Since the issue of contributory negligence was not submitted, the request relating to the burden of proof was properly denied.

Certain other requests filed by the plaintiff sought instructions, variously phrased, that it was the defendant's duty "to make proper rules and regulations regarding the performance of the work" and in particular, to instruct its employees with respect to operation of the elevator and "use of a system of signals." While there was testimony that no "instructions" were given with respect to hand signals, employees who testified consistently described a single method of signaling as that which was in fact used. The testimony of the elevator operator indicated that the system was arranged by him with the other employees pursuant to direction by the superintendent that he do so.

The charge as given referred in at least six places to the duty of the defendant to give its employees "such instructions as are necessary for their protection" or to provide "suitable instructions and rules and regulations with which to perform the work." While there was no specific reference to giving instructions with respect to hand signals, these were the only instructions referred to in the testimony, and the jury could not have been misled. There was no abuse of discretion in declining to make the specific application of the law which the requests sought. *Colby* v. *Lee*, 83 N. H. 303; *Williams* v. *Walker,* 95 N. H. 231, 236.

The request for an instruction that the defendant had a duty to use care to install a bell system or a locking device on the elevator if

necessary to safety fell in the same category. The jury was plainly told in general terms of the master's duties in this respect.

The request which would have made the defendant chargeable with knowledge of the dangers incident to use of an elevator without such devices, implied that these dangers were not overcome by the devices used by the defendant, an issue upon which the testimony was in conflict. The request was properly denied. *Holmes* v. *Stores*, 95 N. H. 478, 480. So also was the request seeking an instruction that the defendant was under a duty to see that regulations promulgated by it were carried out. There was no evidence to warrant such an instruction. *Beaudin* v. *Company*, 94 N. H. 202, 206.

The plaintiff's motion to set aside the verdict was based primarily upon the contention that "the verdict was obtained upon perjured testimony." This contention arises from testimony of "one of the Walsh Brothers" that when the staging reached a point higher than its location when the accident occurred, "we installed a bell system," and his further explanation that this was done because "when we got into real cold weather . . . the top of the staging was canvas enclosed and heated." Affidavits filed in support of the motion tended to show that a canvas enclosure was not used upon the staging until three or four weeks after the accident, but that the bell was in fact installed on the afternoon following the accident. Assuming that the facts were correctly stated in the affidavits, and that installation of the bell system was not delayed until canvas was in use, it does not follow that the testimony of the witness Walsh was perjured. He was not at the scene on the day of the accident but learned of it upon his next visit to the work. He was there some two days a week. It is as probable that he was mistaken in his recollection as to when the bell system was installed, as that he deliberately misstated information which he volunteered, and which would have been incompetent had the plaintiff sought to obtain it from him. If he was mistaken, either in his recollection that the bell was not installed until canvas was used, or in supposing that canvas was used earlier than it was, no perjury was involved. The case presents no occasion for application of the rule of *Rasquin* v. *Cohen*, 92 N. H. 440, where a party was held guilty of misconduct because the evidence proved or strongly tended to prove that his false testimony was dishonest.

The final exception relied upon by the plaintiff was to the exclusion of testimony by the elevator operator as to whether "on other construction jobs" he had found it "usual to have some sort of a signal device on these elevators." The witness was an iron worker by trade,

with no prior experience in operating hoisting machinery "exactly of this type." The extent to which he was familiar with the practice on "other construction jobs," and to which such jobs were similar to the one in question did not appear. The witness' answer was properly excluded in the Court's discretion. *Dowling* v. *Shattuck*, 91 N. H. 234.

*Judgment on the verdict.*

All concurred.