Merrimack,
No. 5217.

HILDA CASE

*v.*

FIDELITY AND CASUALTY COMPANY OF NEW YORK *& a.*

Argued April 8, 1964.
Decided July 1, 1964.

*Hall, Zellers, Morse & Gallagher* (*Mr. Mayland H. Morse, Jr.* orally), for the plaintiff.

*Sulloway, Hollis, Godfrey & Soden* and *Charles F. Sheridan, Jr.* (*Mr. Sheridan* orally), for Fidelity and Casualty Company of New York.

*Devine, Millimet, McDonough, Stahl & Branch* for New Hampshire Fire Insurance Company, furnished no brief.

LAMPRON, J. On December 20, 1960, a very cold morning,

Hilda Case's car would not start. She called Pep's Service Station and her automobile was towed from her home to the station where it was determined that the starter was frozen and the battery very low. When informed of the condition of the battery, she asked Peppin to charge it to insure the start of her car when she left work that evening. She then drove out her car which had been backed into the south bay of the station and headed it into the same stall to within three or four feet of the wall so that the battery charger cables could reach the battery in her car.

After the charger had been connected to the battery for about twenty minutes, the plaintiff, who had been sitting in the office, came into the service part of the garage and asked Peppin how the battery was progressing. He advised her that she should take the car to the garage where she had recently purchased it for an adjustment as the battery could not be charged.

"I disconnected the battery charger cables from the battery. I then said to Mrs. Case to wait a minute that I better check to see if the car would start before I put the charger away. At this time, Mrs. Case was standing on the north side of her car in what I call the alley between two cars in the garage. There was room to walk between the front of the Case car and the frame lift [a hoist which was between the front of her car and the wall] so I walked around to the left front door of the car. I got about 3/4 of the way into the car and turned the ignition key and . . . the engine started and the car lurched forward. I don't believe I had closed the hood and think it was still up. I turned the key off immediately, then started the car and backed off about three or four feet. I found Mrs. Case had gone around the front of the car and when the car lurched forward the car had pinned her left leg against the frame lift or hoist."

The New Hampshire Company policy agreed to pay on behalf of Peppin, damages for bodily injury arising out of the "ownership, maintenance or use of the premises for the purpose of . . . [a] repair shop, service station . . . and all operations necessary or incidental thereto." We have been informed that this insurer has conceded, rightly in our opinion, the fact of coverage and applicability of its policy to this incident. It maintains however that its policy is subordinate to coverage by Fidelity and constitutes only excess protection.

Fidelity, by its policy issued to Hilda Case covering the automobile involved, agreed "to pay on behalf of the insured all

sums which the insured shall become legally obligated to pay as damages because of bodily injury . . . sustained by any person . . . arising out of the ownership, maintenance or use of the owned automobile." With respect to the owned automobile "insureds" include "(1) the named insured and any resident of the same household, (2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured."

While conceding that Peppin was acting with permission of the named insured, Hilda Case, Fidelity takes the position that its policy affords protection to Peppin as an insured under the omnibus clause only if he is "using such automobile." It argues that a reasonable man in the position of the insured would understand those words to mean the affirmative employment of a vehicle for its vehicular qualities and maintains that Peppin's acts at the time of the accident did not constitute such a use.

This court did hold in *Peerless Ins. Co.* v. *Gould*, 103 N. H. 134, as pointed out by Fidelity, that a reasonable man in the position of the policyholder would not understand a provision granting coverage for the occasional use for business purposes of an automobile owned by the insured to mean that it covered the use of the vehicle as an article of merchandise on display in the lot of a sales agency for used cars. Rather the insured would take the language to relate to the utilization of the automobile in the ordinary manner, that is, its use as a vehicle.

However we held in *Carter* v. *Bergeron*, 102 N. H. 464, 470, that "the words 'arising out of . . . use' are very broad, general and comprehensive terms." In *Eastern Transp. Co.* v. *Liberty Mut. Cas. Co.*, 101 N. H. 407, we decided that injuries sustained in a collision with a tractor-trailer stopped in the highway caused by its defective lighting equipment and other negligence could be found to have been caused by accident arising out of the use of the insured truck which had towed it into the highway. In the *Carter* case, we held that if the insured vehicle was being used by an employer to regulate or pace the speed of a truck following it driven by an employee it could be found that the accident in which the truck was involved arose out of the use of the vehicle driven by the employer although it was not itself physically involved in the accident. *Carter* v. *Bergeron*, 102 N. H. 464, 471.

It seems to us that when in this case the plaintiff was injured by direct contact with the automobile which resulted from its

having "lurched forward" when its engine was started by turning on the ignition key by Peppin that this accident all the more certainly arose out of the use of the automobile within the terms of the Fidelity policy.

Fidelity argues next that if Peppin was using the Case automobile with permission in making repairs he was necessarily using it in the automobile business and is excluded from coverage by the terms of its policy. By its definition "'automobile business' means the business or occupation of selling, repairing, servicing, storing or parking automobiles." The policy provides that coverage for liability does not apply "(g) to an owned automobile while used in the automobile business, but this exclusion does not apply to the named insured, a resident of the same household as the named insured, a partnership in which the named insured or such resident is a partner, or any partner, agent, or employee of the named insured, such resident or partnership." This presents the issue of whether Peppin as an independent contractor was using the plaintiff's car in the automobile business at the time of this accident.

Here again we test the language of the policy by the touchstone of what a reasonable person in the position of the insured would have understood this exclusion to mean. *Lalos* v. *Tickler*, 103 N. H. 292, 295. We are of the opinion that this language is not intended to exclude coverage because the automobile happens to be in the possession or under the control of a person whose business is automobiles. Nor can it reasonably be interpreted to deny coverage by the mere fact that a repairman is using a customer's car in the process of servicing it. On the contrary a reasonable person in the position of the insured would understand it to mean that coverage would be excluded when the automobile was employed for some purpose in connection with the automobile business. Plaintiff's car was at this service station to be repaired, not to be "used in the automobile business." *McCree* v. *Jenning*, 55 Wash. 2d 725, 727; *Chavers* v. *St. Paul Fire and Mar. Ins. Co.*, 188 F. Supp. 39 (N. D. Ohio 1960), *aff'd* 295 F. 2d 812; *LeFelt* v. *Nasarow*, 71 N. J. Super. 538, 549, 555, *aff'd* 76 N. J. Super. 576; *Challis* v. *Commercial Standard Ins. Co.*, 117 Ind. App. 180; 7 Appleman, Insurance Law and Practice, s. 4372 (supp).

We are mindful, as pointed out by Fidelity, that the facts in the above cases differ in certain respects from those in this case and that some jurisdictions apply a rule of construction which

differs from ours. However, we are of the opinion that the exclusion of use in the automobile business relied on by Fidelity does not bar coverage under our rule of interpretation and on the facts of this case and we so hold.

Both New Hampshire Fire Insurance Company and The Fidelity and Casualty Company policies afford coverage for this accident. The Fidelity policy by its terms provides coverage for bodily injury "sustained by any person" which includes the plaintiff in this case. *Howe* v. *Howe*, 87 N. H. 338, 341; *Farm Bureau &c. Ins. Co.* v. *Garland*, 100 N. H. 351, 352. There remains the determination of the respective obligations of the insurers. Each policy contains the provision that if the insured has other insurance against a loss covered by the policy the company shall not be liable for a greater proportion of such loss than the applicable limit of liability stated in the declaration bears to the total applicable limit of liability of all valid and collectible insurance against such loss. Neither policy provides that in a case like the present it will afford excess insurance only or have no liability if there is other valid and collectible insurance. We therefore hold that since both policies have a pro rata clause and the same limit of liability each insurer is liable for its proportionate amount of any judgment recovered for this accident. *Kenner* v. *Century Indemnity Co.*, 320 Mass. 6; 7 Am. Jur. 2d, Automobile Insurance, *s.* 200, *p.* 542.

Fidelity and New Hampshire policies consequently provide concurrent coverage within the limits of their policies. Each is obligated to defend and pay half of the cost of the defense. 7A Appleman, Insurance Law and Practice, *s.* 4691, *p.* 511. Each company is also obligated within its limit of liability to pay one half of any judgment recovered with interest and costs.

*Remanded.*

All concurred.