FIRST INSURANCE COMPANY OF HAWAII, Ltd., a Hawaii corporation, Plaintiff-Appellant,

v.

CONTINENTAL CASUALTY COMPANY, an Illinois corporation, Defendant-Appellee.

No. 26321.

United States Court of Appeals, Ninth Circuit.

July 17, 1972.

As Modified on Denial of Rehearing Sept. 5, 1972.

Alexander C. Marrack (argued), Honolulu, Hawaii, for plaintiff-appellant.

James F. Ventura (argued), of Libukman, Shimabukuro & Ventura, Honolulu, Hawaii, for defendant-appellee.

Before BROWNING, WRIGHT and CHOY, Circuit Judges.

CHOY, Circuit Judge:

This is an appeal in a diversity of citizenship insurance case in which Hawaii law controls. First Insurance Company of Hawaii, Ltd., (First Insurance), a Hawaii corporation, appeals a judgment by a judge without a jury denying subrogation against Continental Casualty Company (Continental), an Illinois corporation. We reverse and remand.

HSM Ventures contracted with Park Engineering, Inc. (Park) for engineering and supervisory services in the development of the Waipahu Industrial Park on land adjacent to the United States naval facilities at Pearl Harbor, Hawaii. Park subcontracted with Walter Lum Associates, Inc. (Lum) for soil engineering assistance. Hawaiian Dredging and Construction Company (Hawaiian Dredging) did the construction work.

As originally designed, the project contemplated that soil from excavating and leveling parts of the development would be used to fill depressions in other areas. As construction progressed, approximately 30,000 cubic yards of excess soil was generated. Park decided, without consulting Lum, to spread the excess fill in a swampy area near the Pearl Harbor boundary line, thus raising the area's surface ten feet.

Lum's prior testings had revealed weak subsoil conditions in this swampy area which contained a small, filled-in pond. Park knew or should have known of this report. Nevertheless, Park decided to deposit the excess fill over the pond, where the increased weight caused soil slippage which bent several Standard Oil pipelines located in an easement on the adjoining Government property. One of the pipes broke, spilling oil into the harbor.

Standard Oil sued Park, Lum, and Hawaiian Dredging in the district court. Park notified both insurance companies of the litigation, having purchased a comprehensive liability policy from First Insurance and a professional services policy from Continental. First Insur-

ance agreed to defend the lawsuit, but Continental refused to participate, asserting that it was not liable under its policy.

The district court entered summary judgment for Lum, and also found Hawaiian Dredging blameless. On the other hand, the court found that since Park was responsible for both the initial plan which produced too much fill and the "proposed change in design" which deposited the excess over the pond, Park was negligent in not determining the effect, if any, the pond would have on the soil level, in ignoring Lum's report, in not consulting Lum about the proposed alteration in the project plan, and in failing to take any precautions when depositing the soil. In sum, the court found that Park's professional decisions were not made with "that degree of care which good engineering demanded in this particular case . . ."

Shortly after that decision was rendered, First Insurance negotiated a settlement of $30,288.74 with Standard Oil in satisfaction of the judgment, costs, expenses, and attorneys' fees. First Insurance then sued Continental in the district court for subrogation and/or contribution. This second suit was also tried without a jury. The court found that both First Insurance and Continental were liable under their respective policies, but that Continental's coverage was "excess," thus precluding subrogation. 313 F.Supp. 808 (Hawaii, 1970).

Both insurance companies deny liability because of certain exclusions written into their respective policies with Park. Such insurance exclusions are narrowly construed against the insurer, and the insurance company must prove that the exclusion clause is applicable. Retherford v. Kama, 52 Haw. 91, 470 P.2d 517 (1970).

First Insurance contends that it is not liable for Park's negligence because of two exclusions, one contained in the printed body of its policy, and one contained in an amendatory endorsement attached to the policy by the parties.

We need not discuss the printed exclusion because the amendatory exclusion does release First Insurance from liability. This exclusion reads, in relevant part:

"It is agreed that such insurance as is afforded by the policy excludes:

"1. The hazard arising out of faulty design, maps, plans and specifications."

This exclusion was designed to exclude from coverage claims which arose out of Park's professional services; and Park's negligence, as found by the Standard Oil decision, was professional in nature. Park bore the sole responsibility for the initial plan which called for little or no excess soil, a prediction which proved inaccurate. While Park may not have been negligent in proposing this original plan, the firm was negligent in proposing and implementing without consulting Lum the modified plan under which the excess fill was deposited over the pond. This professional decision resulted in the soil slippage and oil spillage. It constituted a "faulty design or plan" within the meaning of the exclusion. First Insurance was not liable under the terms of its policy.

■ Continental argues that it is not liable under its policy because of its Exclusion (c), which reads,

"This policy does not apply to claims arising out of:

.  .  .  .  .  .

"(c) the making of, or absence of surveys of the subsurface condition or ground testing, unless specifically endorsed hereon."

Since the Standard Oil court found Park was negligent in failing to obtain further subsoil tests, Continental maintains that this exclusion applies. However, the injury here did not result from Park's failure to make *further* tests and surveys. Lum had already tested and reported weak subsoil. Park knew or should have known of these tests, yet it ignored its own soil expert and ordered the excess soil dumped on the pond. This decision caused the soil to slip. The exclusion is inapplicable, and Continental is liable under its policy.

■ Since First Insurance defended the Standard Oil litigation and satisfied the judgment, it is entitled to subrogation from Continental. Alamida v. Wilson, 53 Haw. ——, 495 P.2d 585 (1972); Kapena v. Kaleleonalani, 6 Haw. 579 (1885). Continental, however, interposes two theories between First Insurance and recovery. First, relying on Yuen v. London Guarantee & Accident Co., Ltd., 40 Haw. 213 (1953), it contends that First Insurance, having defended Park in the Standard Oil suit, is estopped to deny liability here. *Yuen* held that the insurance company which had defended a primary action for damages arising from an automobile accident with full knowledge that its insured refused to cooperate with it was estopped to raise the defense of noncooperation in a subsequent suit to enforce the judgment secured against the insured. This is not a suit to enforce a primary judgment, but an action between two insurance companies for subrogation. Nor is there any evidence that "the act of the party against whom the estoppel is sought . . . gained some advantage for himself or produced some disadvantage to another; or the person invoking the estoppel [has been] induced to change his position . . ." *Yuen, supra,* at 230. Estoppel is inappropriate here.

■■ In the alternative, Continental argues that First Insurance was a "volunteer" and thus is not entitled to subrogation. But First Insurance's defense was not done "officiously, and as a mere volunteer . . ." *Kapena, supra,* 6 Haw. at 583. An insurance carrier must defend any suit which potentially seeks damages within the coverage of its policy. This duty is explicit in First Insurance's policy, and is enforced by the courts. *See, e. g.,* Gray v. Zurich Insurance Co., 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966). First Insurance was obligated to defend the Standard Oil

action when the complaint alleged facts which were potentially within the coverage of its policy. Shaw v. Aetna Casualty and Surety Co., 407 F.2d 813 (7th Cir. 1969). Aside from its duty to defend, First Insurance knew that an insurance carrier which refuses to defend an action on the ground of non-coverage is bound by a judgment entered by default and is liable for that judgment. Medeiros v. First Insurance Company of Hawaii, 50 Haw. 401, 441 P.2d 341 (1968). Under such a legal threat, First Insurance was not a volunteer.

▮ First Insurance is therefore entitled to recover from Continental $14,750—the amount of the Standard Oil settlement less Continental's $3,000 deductible and $2,000 loss contribution. Although the Supreme Court of Hawaii has not passed on this point, we believe it fair and equitable also to award First Insurance $2,793.50 (which is half the costs, expenses and attorneys' fees in the Standard Oil litigation, less Continental's $3,000 deductible in its policy with Lum). Continental was obligated by its policy to defend the suit against Park. Its refusal to do so cannot free it from its contractual obligation to bear a fair share of the expenses of that action. 7A Appleman Insurance Law and Practice, § 4691, p. 511; Oregon Automobile Insurance Co. v. United States Fidelity and Guaranty Co., 195 F.2d 958 (9th Cir. 1952); Continental Casualty Co. v. Zurich Insurance Co., 57 Cal.2d 27, 36–38, 17 Cal.Rptr. 12, 18–19, 366 P.2d 455, 460–462 (1961).

▮ However, First Insurance's ultimate non-liability should not free it from its concurrent contractual duty to defend. Since "[t]he [contractual] obligation to defend is separate and distinct from the duty to provide coverage and to pay [a judgment]," [1] we believe it equitable to hold (as our augury of Hawaii law) that whatever the division of the principal liability, insurance companies here with a mutual duty to defend should bear the defense costs equally.[2] See Industrial Indemnity Co. v. Aetna Casualty & Surety Co., 465 F.2d 934 (9th Cir. 1972), which we also decide today, for another application of this rule.

Reversed and remanded for entry of judgment for First Insurance in the amount of $17,543.50, plus coss, expenses, and reasonable attorneys' fees for this litigation.

1. St. Paul Mercury Insurance Co. v. Huitt, 336 F.2d 37, 44 (6th Cir. 1964). *Accord,* Burton v. State Farm Mutual Automobile Insurance Co., 335 F.2d 317, 323 (5th Cir. 1964); Gray v. Zurich Insurance Co., 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966).

2. Other cases in which the court split defense costs 50–50 include Ryder Truck Rental, Inc. v. Schapiro & Whitehouse, Inc., 259 Md. 354, 269 A.2d 826 (1970); American Mutual Liability Insurance Co. v. Milwaukee Insurance Company of Milwaukee, 283 Ala. 414, 218 So.2d 129 (1969); and American Fidelity & Casualty Co. v. Pennsylvania Casualty Co., 97 F.Supp. 965 (E.D.Tenn., 1950), aff'd per curiam, 188 F.2d 364 (6th Cir.1951). Contra, Nationwide Mutual Insurance Co. v. General Accident Fire & Life Assurance Corp., 23 Ohio App.2d 263, 262 N.E.2d 885 (1970).

Our recent decision in Pacific Power & Light Co. v. Transport Indemnity Co., 460 F.2d 959 (9th Cir. 1972), is distinguishable. There we dealt with a situation in which the governing Oregon law [Lamb-Weston, Inc. v. Oregon Automobile Ins. Co., 219 Or. 110, 341 P.2d 110, 119, rehearing denied, 346 P.2d 643 (1959)] mandated proration of the principal liability. In Pacific Power & Light Co. we recognized that "[o]rdinarily the duty to pay costs and attorneys' fees is considered apart from the duty to pay a liability under the policy," but held that since Oregon state law required proration of the loss among multiple insurers, "there appears little reason to distinguish between the defense costs and the principal liability under the policy coverage." 460 F.2d at 963. *See also* General Accident, Fire & Life Assurance Corp. v. Continental Casualty Co., 287 F.2d 464, 467–468 (9th Cir. 1961).