Hillsborough
No. 6985

LIBERTY MUTUAL INSURANCE CO.

v.

HOME INSURANCE INDEMNITY CO. & *a.*

January 31, 1976

*Wadleigh, Starr, Peters, Dunn & Kohls* and *James S. Yakovakis* and *Eugene M. Van Loan III (Mr. Yakovakis* orally) for the plaintiff.

*Augustine J. McDonough,* by brief and orally, for the defendant Home Insurance Indemnity Co.

*Devine, Millimet, Stahl & Branch* and *Joseph M. McDonough III (Mr. McDonough* orally) for defendants Richard Lavigne and Car Land Auto Body Inc.

*Wiggin, Nourie, Sundeen, Pingree & Bigg* and *William S. Orcutt* and *W. Wright Danenbarger* for defendants John E. and Donna Akerly.

LAMPRON, J. Petition for declaratory judgment under RSA 491:22 brought by Liberty seeking to establish the rights and obligations of the parties with respect to certain insurance policies issued by Liberty and Home. The matter was heard by *Grant,* J., who died before rendering a decision. The parties then agreed on certain facts. One of these was that Richard Lavigne was president of Car Land at the time of an accident on January 5, 1971, on the premises of Car Land in Hooksett when a car owned by Stella Murphy and driven by Lavigne collided with defendant John Akerly. A motion by Home that the part of the agreement referring to the fact that Lavigne was president at that time be deleted was granted by *Mullavey,* J. At a hearing held on the merits of the petition, Lavigne's motion that the above order be vacated to allow the introduction of further evidence thereon was granted by *Perkins,* J. After hearing, the order to delete was affirmed and the merits of the petition were reserved and transferred to this court without

ruling on the agreed statement of facts of the parties and the evidence presented.

The Stella Murphy automobile was insured by Liberty under a family automobile policy. She had left her car at Car Land for body repairs. Richard Lavigne was foreman of the body shop, and allegedly president of Car Land, on the date of the accident. While Lavigne was in the process of driving the Murphy car from the parking lot into the garage for the repairs it collided with John Akerly, an employee of Car Land. Home insured Car Land under a general automobile liability policy which included garage insurance. Akerly collected workmen's compensation benefits under RSA ch. 281 from an insurer of Car Land other than Home. Thereafter he and his wife Donna brought an action to recover damages from Lavigne for his alleged negligent operation of the Murphy automobile.

I. Plaintiff Liberty denies coverage for the accident by virtue of exclusion (f) which provides that its policy does not apply "to bodily injury to any fellow employee of the insured injured in the course of his employment if such injury arises out of the use of an automobile in the business of his employer." The parties agreed to the following facts. Lavigne was operating the Murphy car with the implied permission of the owner and was an insured under the Liberty policy. The Murphy vehicle was at the time in the care, custody and control of Car Land for the purpose of being repaired. Lavigne was operating the car in connection with the requested repairs and in the course of his employment with Car Land which was engaged in the general business of automobile repairs. Akerly was an employee of Car Land and was injured in the course of his employment.

The defendants maintain that this exclusion does not apply because Lavigne was a foreman, and allegedly president, of Car Land and thus not a fellow employee of Akerly. They maintain further that Lavigne was not driving or using the Murphy car in the business of Car Land, their employer. There was evidence that Lavigne was a working foreman. He did not perform the repair work himself but did drive cars from the parking lot into the body shop to have them repaired. He was doing just that at the time of the accident. Although part of his job as foreman consisted in assigning the work to the repairmen, he did not intend to assign the Murphy car to Akerly.

If Lavigne was president of Car Land at that time this would not,

in and of itself, prevent him from being its employee and a fellow employee of Akerly. *Hirsch v. Company,* 97 N.H. 480, 92 A.2d 402 (1952); *White v. Company,* 90 N.H. 315, 8 A.2d 737 (1939). It is not a question of the rank of the individual who performs the act but of the character of the act performed. *Galvin v. Pierce,* 72 N.H. 79, 83, 54 A. 1014, 1017 (1903). The driving of the Murphy car by Lavigne from the parking lot into the garage to be repaired was an act of the common employment in which he and Akerly were engaged, that is, the repair of cars of the customers of Car Land. Lavigne was not performing an act of management, either as president or foreman, and in that respect was a fellow employee of Akerly within the terms of the exclusion. *Hardiman v. Walsh Bros.,* 96 N.H. 456, 458-59, 79 A.2d 19, 21 (1951).

Defendants rely on *Case v. Fidelity & Casualty Co.,* 105 N.H. 422, 201 A.2d 897 (1964), for their position that the injury to Akerly did not arise "out of the use of an automobile in the business of his employer". In *Case* we held that a reasonable person in the position of the insured would not have considered that the use made by a repairman of a customer's car in the process of servicing it would constitute use in the "automobile business", which was excluded by the policy. However, the exclusion of an injury to a fellow employee by an insured arising out of the use of an automobile "in the business of his employer" would be construed by a reasonable insured as including the driving of a customer's car in the process of repairing it, which is "the business of his employer". The latter is a phrase of general signification and is not limited to any particular type of business. *See Merchants & c. Cas. Co. v. Tuttle,* 98 N.H. 349, 355, 101 A.2d 262, 266 (1953); 7 J. Appleman, Insurance Law and Practice § 4413 (1962, Supp. 1972, Supp. 1975). Such a provision is intended to exclude coverage from a hazard which is not normally associated with the usual operation of a family automobile. We hold that this exclusion in the "Family Automobile Policy" issued by Liberty to Stella Murphy effectively prevented coverage under the policy itself for this accident. *See Merchants Mut. & c. Co. v. Melcher,* 94 N.H. 174, 49 A.2d 504 (1946); 1 R. Long, The Law of Liability Insurance § 3.18 (1975); Annot., 45 A.L.R.3d 288 (1972). It is therefore unnecessary to consider the other exclusions relied on by Liberty.

II. Home agreed that Richard Lavigne was an insured under its "General Automobile Liability" policy issued to Car Land, the "Garage Insurance" coverage of which is involved in this case. It

also agreed that at the time of the accident Lavigne was operating the Murphy vehicle in connection with the requested repairs thereon and in the course of his employment for Car Land. Finally Home agreed that John Akerly was not an employee of Richard Lavigne. The policy provided coverage to an insured "caused by an occurrence and arising out of garage operations."

The only provisions of the policy relied on by Home in its brief to avoid coverage are the following exclusions: "This insurance does not apply, under the Garage Liability Coverages: ... (c) to any obligation for which the insured or any carrier as his insurer may be held liable under workmen's compensation, unemployment compensation or disability benefits law, or under similar law: (d) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured . . . ." It is evident that under the agreement of the parties neither exception will apply if the "insured" is Lavigne.

With respect to both exclusions the determinative question is whether the term "insured" is limited to the party now calling for coverage, Richard Lavigne, or whether it also includes the named insured, Car Land Auto Body. 7 Am. Jur. 2d *Automobile Insurance* § 133 (1963); Annot., 50 A.L.R.2d 78, 97 (1956). Some courts hold that, if the injured party is an employee of any insured, these exclusions are applicable despite the absence of an employment relationship between the injured party and the person claiming coverage. *Michigan Mut. Liab. Co. v. Continental Cas. Co.,* 297 F.2d 208 (7th Cir. 1961); *Michigan Mut. Liab. Co. v. Carroll,* 271 Ala. 404, 123 So. 2d 920 (1960); *Farmers Ins. Group v. Home Indem. Co.,* 108 Ariz. 126, 493 P.2d 909 (1972). Other cases hold that these exclusions apply only if the injured party is an employee of the particular insured *seeking the protection of the policy. Walker v. Fireman's Fund Ins. Co.,* 268 F. Supp. 899 (D. Mont. 1967); *Maryland Cas. Co. v. N.J. Mfrs. Cas. Ins. Co.,* 28 N.J. 17, 145 A.2d 15 (1958); *Cimarron Ins. Co. v. Travelers Ins. Co.,* 224 Ore. 57, 355 P.2d 742 (1960).

The objective of these exclusionary clauses is to avoid duplication of coverage with respect to compensation insurance. *Commercial Standard Ins. Co. v. American Gen. Ins. Co.,* 455 S.W.2d 714, 720 (Tex. 1970). They are intended to prevent an employee from receiving workmen's compensation and suing his employer for negligence. *Float-Away Door Co. v. Continental Casualty Co.,* 372 F.2d 701, 708 (5th Cir. 1967), *cert. denied,* 389 U.S. 823 (1967). Under the definitions of Home's general automobile liability policy, there

appears the following: "The insurance afforded applies separately to each insured against whom claim is made or suit is brought". As an insured under the garage insurance provided by that policy, Lavigne need not be protected from duplication of claims as he is not the employer of Akerly. Under the agreed facts in this case we hold that a reasonable person in the position of the insured would come to the conclusion that the workmen's compensation and employee exclusions would not apply to prevent coverage to Lavigne who is not an employer and thus has no employees or liability under workmen's compensation. We hold that Home is obligated to defend and indemnify Richard Lavigne within the limits of its policy. *See Merchants & c. Cas. Co. v. Tuttle,* 98 N.H. 349, 352, 101 A.2d 262, 264 (1953).

III. As it is agreed that at the time of the accident on January 5, 1971, Richard Lavigne was operating the Murphy vehicle with the implied permission of the owner, we must consider Liberty's liability under the Financial Responsibility Law RSA 268:1 VII (Supp. 1975). The required limit on that date for injury to any one person was $15,000.00. Laws 1969, 316:1. The Liberty policy provided that "[I]f the insured has other insurance . . . the insurance with respect to . . . a non-owned automobile shall be excess insurance over any other valid and collectible insurance." Such a provision has been held valid in *Davy v. Merchants & c. Cas. Co.,* 97 N.H. 236, 85 A.2d 388 (1952); *Merchants & c. Cas. Co. v. Tuttle,* 98 N.H. 349, 101 A.2d 262 (1953); *Allstate Insurance Co. v. Roberts,* 109 N.H. 108, 244 A.2d 199 (1968). In each of these cases, however, the insurance in question involved required coverage under RSA 268:1 VII (b) (Supp. 1975) of the motor vehicle liability policy. The statute provides expressly that such insurance "applies only if no other valid and collectible insurance is available to the insured". Hence the policy can properly provide that it be excess insurance.

In the present case Lavigne is seeking coverage under RSA 268:1 VII (a) (Supp. 1975) as an operator of the insured vehicle with the express or implied consent of the insured Stella Murphy. The legislature did not provide that insurance required to meet the requirements of that section applies only if no other valid and collectible insurance is available to the insured. Hence a provision in the policy that such insurance is excess insurance is invalid as regards coverage under that section of the Financial Responsibility Act. *See* 73 Am. Jur. 2d *Statutes* § 316 (1974). Such an interpretation is buttressed by RSA 268:16 III which provides that with respect to

accidents subject to the minimum limits of liability under this Act "no violation of exclusions, conditions, other terms, or language contained in the policy . . . shall operate to defeat or avoid the policy . . . ." We hold that both Liberty, within the $15,000 limit of its financial responsibility coverage, and Home, within the limits of its $100,000 policy coverage, afford Lavigne primary coverage for this accident.

IV. The result reached would be the same whether or not Richard Lavigne had been president of Car Land on the day of the accident. Consequently, it is unnecessary to consider the issue whether the trial court erred in refusing to admit in evidence the minutes of a meeting of the Car Land corporation on February 10, 1970, at which Lavigne was allegedly elected its president.

*Remanded.*

DUNCAN, J., did not sit; the others concurred.

ON MOTION FOR REHEARING: After the foregoing opinion was filed, defendant Home Insurance filed a request for clarification.

*Augustine J. McDonough* for the motion.

*Joseph M. McDonough III* opposed the motion.

*James S. Yakovakis* opposed the motion.

LAMPRON, J. We treat the request for clarification filed by defendant Home Insurance as a motion for rehearing. The opinion dated January 31, 1976, is modified by adding the following at the end of part III:

"As both policies afford primary coverage, Liberty Mutual and Home Insurance have a joint obligation to defend Richard Lavigne and to share equally the costs of defense. *First Ins. Co. v. Continental Cas. Co.,* 466 F.2d 807, 811 (9th Cir. 1972); *American Mut. Liab. Co. v. Milwaukee Ins. Co.,* 283 Ala. 414, 218 So. 2d 129, 133-34 (1969); *see Case v. Fidelity & Casualty Co.,* 105 N.H. 422, 427, 201 A.2d 897, 900-01 (1964). Furthermore, each insurer is obligated to pay a pro rata share of any resulting judgment based upon the limits of coverage noted above. 16 C.J. Couch, Cyclopedia of Insurance Law

§§ 62.32-62.33 (1966, Supp. 1975); Annot., 21 A.L.R.2d 611 (1952 & Later Case Service)."

*Motion for rehearing denied;*
*opinion modified.*

February 27, 1976.