**COMMERCIAL UNION ASSURANCE COMPANIES**

v.

**AETNA CASUALTY AND SURETY COMPANY and Carol J. Duffy.**

Civ. A. No. 77–237.

United States District Court, D. New Hampshire.

Sept. 5, 1978.

Louis H. Silverman, Dover, N. H., for plaintiff.

Irving H. Soden, Concord, N. H., James J. Kalled, Wolfeboro, N. H., for defendants.

## OPINION

DEVINE, District Judge.

This is a petition for declaratory judgment pursuant to 28 U.S.C. 2201. Jurisdiction is based on diversity of citizenship and amount in controversy. 28 U.S.C. 1332(a)(1). The basic issue before the Court concerns the interpretation of a certain endorsement (hereinafter described) attached to a so-called Comprehensive Automobile Liability Policy (hereinafter "CAL") issued by defendant Aetna Casualty and Surety Company (hereinafter "Aetna") on R. Zoppo Company, Inc. (hereinafter "Zoppo") for the policy period of January 1, 1975, to January 1, 1976. The plaintiff, Commercial Union Assurance Companies (hereinafter "Commercial") also had issued a certain Comprehensive General Liability Policy (hereinafter "CGL") on Zoppo for the period June 25, 1974, to June 25, 1977. It is conceded by Commercial that its policy provides coverage to Zoppo under the circumstances hereinafter outlined.

The accident that gives rise to this litigation occurred at approximately midnight on September 20, 1975, when a motor vehicle operated by the defendant, Carol J. Duffy (hereinafter "Duffy") was in collision with a piece of construction equipment owned by Zoppo.

## I. THE FACTS

Zoppo was engaged in a sewer construction contract for the City of Dover, New Hampshire. Included among its equipment was a certain Drott Cruz-Air, model number 40, New Hampshire registration number Tractor 14211, trench digging machine. This piece of equipment had been used during the working day of Friday, September 19, 1975, for trench digging operations, and at the end of that working day, it was parked at the lead end of a filled section of

trench, and the area was barricaded and illuminated with flashing lights. Defendant Duffy's motor vehicle collided with this piece of parked equipment, and as a result, it is alleged that Duffy has sustained severe personal injuries. She has brought action against Zoppo (and others) to recover for such injuries in this court (Civil No. 77–107, *Duffy v. Zoppo, et al.*).

The CAL policy issued by Aetna provided that it would pay on behalf of Zoppo all sums that Zoppo should become legally obligated to pay as damages because of bodily injury or property damage " . . . caused by an occurrence and arising out of the ownership, maintenance, or use, . . of any automobile . . . ." The policy further defined "automobile" as meaning "a land motor vehicle, trailer or semi-trailer designed for travel on public roads, . . but does not include mobile equipment . . . ."

The Aetna policy further defined "mobile equipment" as meaning:

a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, (1) not subject to motor vehicle registration, or (2) maintained for use exclusively on premises owned by or rented to the *named insured*, including the ways immediately adjoining, or (3) designed for use principally off public roads, or (4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills, concrete mixers (other than the mix-in-transit type); graders, scrapers, rollers and other road construction or repair equipment; air-compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment; . . . .

The Drott loader or trench digger here involved replaced a similar type piece of equipment by endorsement of January 1, 1975. This equipment is further described in the Aetna policy in a so-called "Automobile Schedule" as being garaged in New Hampshire, and the premium charged therefor is identical to that charged for other items of construction equipment, including dump trucks and other types of loaders.

The endorsement at issue is set forth in the policy as follows:

THIS ENDORSEMENT MODIFIES SUCH INSURANCE AS IS AFFORDED BY THE PROVISIONS OF THE POLICY RELATING TO THE FOLLOWING:

AUTOMOBILE LIABILITY INSURANCE

ROAD CONSTRUCTION, MAINTENANCE AND SPECIAL EQUIPMENT

IT IS AGREED THAT SUCH INSURANCE AS IS AFFORDED BY THE POLICY FOR BODILY INJURY LIABILITY, FOR PROPERTY DAMAGE LIABILITY AND FOR AUTOMOBILE MEDICAL PAYMENTS APPLIES, SUBJECT TO THE FOLLOWING PROVISIONS:

THE DEFINITION OF AUTOMOBILE IS AMENDED AS FOLLOWS:

1. THE FOLLOWING DESCRIBED EQUIPMENT SHALL BE DEEMED AN AUTOMOBILE WHILE TOWED BY OR CARRIED ON AN AUTOMOBILE NOT SO DESCRIBED, BUT NOT OTHERWISE: IF OF THE CRAWLER–TYPE, *AND* TRACTOR, POWER CRANE OR SHOVEL, DITCH OR TRENCH DIGGER: ANY FARM–TYPE TRACTOR: ANY CONCRETE MIXER OTHER THAN OF THE MIX–IN–TRANSIT TYPE: ANY *RADER*, SCRAPER, ROLLER OR FARM IMPLEMENT: AND, IF NOT SUBJECT TO MOTOR VEHICLE REGISTRATION, ANY OTHER EQUIPMENT NOT SPECIFIED IN (2) BELOW, WHICH IS *DESCRIBED* FOR USE PRINCIPALLY OFF PUBLIC ROADS.

THE FOLLOWING *DESCRIBE* EQUIPMENT SHALL BE DEEMED AN AUTOMOBILE WHILE TOWED

BY OR CARRIED ON AN AUTOMOBILE AS ABOVE DEFINED SOLELY FOR PURPOSES OF TRANSPORTATION OR WHILE BEING OPERATED *SOLELY* FOR LOCOMOTION, BUT NOT OTHERWISE: IF OF THE NON–CRAWLER TYPE, ANY POWER CRANE OR SHOVEL DITCH OR TRENCH DIGGER: ANY AIR COMPRESSING, BUILDING OR *VACUMN* CLEANING, SPRAYING OR WELDING EQUIPMENT OR WELL DRILLING MACHINERY.[1]

Commercial contends that the above endorsement is ambiguous, and that a proper construction of Aetna's CAL policy requires coverage. Aetna responds that the endorsement is standard in form and that it specifically excludes coverage for the accident sustained by defendant Duffy.

## II. CHOICE OF LAW

The Aetna policy clearly lists the vehicle in question as being garaged in New Hampshire, and the policy further indicates knowledge on the part of the underwriter that Zoppo was engaged in business in a number of states (including New Hampshire) in the New England area. Defendant Duffy is a resident of New Hampshire who was injured in an accident that occurred in this state.

■ The Court therefore rules that since the accident occurred in New Hampshire, the injured party is a New Hampshire resident, and the policy indicates knowledge of the fact that the vehicle was to be garaged in New Hampshire, the construction of the Aetna policy is to be determined in accordance with the law of New Hampshire. *Consolidated Mutual Casualty Company v. Radio Foods Company*, 108 N.H. 494, 240 A.2d 47 (1968); *Stephan v. Sears Roebuck & Co.*, 110 N.H. 248, 266 A.2d 855 (1970); *Currier v. Tuck*, 112 N.H. 10, 287 A.2d 625

(1972); *Raymond v. Monsanto Company*, 329 F.Supp. 247 (D.N.H.1971).

## III. APPLICATION OF THE LAW TO THE AETNA POLICY

■ In construing the scope of insurance coverage, New Hampshire employs a standard of considering the policy as a whole in view of all the circumstances and as interpreted by a reasonable person in the position of the insured. *Interstate Fire & Casualty Co. v. Lee Raceway, Inc.*, 113 N.H. 593, 311 A.2d 307 (1973); *Berkshire Mutual Insurance Company v. LaChance*, 115 N.H. 487, 343 A.2d 642 (1975). The policy is to be interpreted from the standpoint of the average layman "in light of what a more than casual reading of the policy would reveal to an ordinary intelligent insured". *Aetna Insurance Co. v. State Motors*, 109 N.H. 120, 125, 244 A.2d 64, 67 (1968); *Brown v. City of Laconia*, 118 N.H. ——, 386 A.2d 1276, 1277 (1978). The objectively reasonable expectations of the insured will be honored, even though painstaking study of the policy provisions would have negated those expectations. *Atwood v. Hartford Accident & Indemnity Company*, 116 N.H. 636, 637, 365 A.2d 744, 746 (1976).

Examination of the Aetna policy clearly indicates that the Drott loader in question would be considered to be "mobile equipment" and would, therefore, not be covered at all, except for the definition of "automobile" outlined in the endorsement at issue. This endorsement (with minor variations) appears to be generally standard, and has been involved in previous litigation. *Associated Independent Dealers, Inc. v. Mutual Service Insurance Company*, 304 Minn. 179, 229 N.W.2d 516 (Minn.1975); *Home Indemnity Co. v. Transport Industry Co.*, 263 Cal. App.2d 100, 69 Cal.Rptr. 504 (1968); *Sparkman v. Highway Insurance Co.*, 266 F.Supp. 197 (D.La.1967). The purported effect of the policy is to modify the definition of

1. Comparison with what Aetna describes as a standard endorsement of the above type indicates that the language to which the Court has applied emphasis in the above description of the endorsement as attached to this policy demonstrates that such attachment contains a number of typographical errors. In sequence, the emphasized language should be: "any"; "grader"; "designed"; "described"; "solely"; and "vacuum". There should also apparently be an arabic numeral "2." in the margin beside the second quoted subparagraph.

"automobile" in order to include construction-type vehicles that are being towed or carried or that are being operated solely for locomotion. It is obvious that in the instant case, the Drott loader was not being towed or carried, nor was it in the process of locomotion, for all parties agree that it was stationary at the time of the accident.

This does not resolve the problem, however, for Aetna took pains to list the loader on a separate "Automobile Schedule" and to charge a premium in the same amount as that charged for dump trucks. Thus, if the exclusionary clause is given the meaning urged by Aetna, it will remove from coverage the very hazard for which a specific charge was made under its Automobile Schedule. *Brown v. City of Laconia, supra,* 386 A.2d at 1277. In a quite similar case, the Court stated:

> By including the road paving machine in the typewritten schedule of automobiles covered by the automobile liability portion of the policy and agreeing upon a separate premium for coverage of the vehicle, the parties indicated their intention to classify the road paving machine as an automobile for purposes of the policy. *County of Wyoming, N. Y. v. Erie Lackawanna Ry. Co.,* 360 F.Supp. 1212 at 1219 (D.N.Y.1973). (citations omitted)

The Court, therefore, finds and rules that the Aetna policy is ambiguous, and that the average person in the position of the insured, Zoppo, would not think that the coverage of the Drott loader, for which he paid a specific premium under the Automobile Schedule, would be removed by the exclusion. *Brown v. City of Laconia, supra; Atwood v. Hartford Accident & Indemnity Company, supra.*

In reaching this conclusion, the Court has followed the mandate imposed upon it by *American Fidelity Company v. Provencher,* 90 N.H. 16, 3 A.2d 824 (1939) that the construction of the policy is for the Court, and the depositions herein have, therefore, been excluded from consideration. The Court adds, however, that a review of these depositions indicates considerable confusion on the parts of the insured, the insurance agent, and the representative of the underwriter as to the meaning of the Aetna policy, and the testimony therein would, therefore, be given little weight by the Court, even if found to be admissible.

## IV.  APPLICATION OF COVERAGES

Both the Aetna and Commercial policies contain identical "conditions" relating to "Other Insurance", which read as follows:

> The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the *insured* has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the *company's* liability under this policy shall not be reduced by the existence of such other insurance.

> When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the *company* shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

> (a) *Contribution by Equal Shares.* If all of such other valid and collectible insurance provides for contribution by equal shares, the *company* shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

> (b) *Contribution by Limits.* If any of such other insurance does not provide for contribution by equal shares, the *company* shall not be

liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

Examination of both policies reveals that neither states its coverage applies in excess of or is contingent upon the absence of other insurance. The insurance afforded by both policies is, therefore, primary, and both companies have an obligation to defend Zoppo in the first instance. *Liberty Mutual Insurance Company v. Home Insurance Indemnity Company*, 116 N.H. 12, 351 A.2d 891 (supplemented 371 A.2d 1171 [1977]).

Inasmuch as both policies furnish primary coverage, the second paragraph of the condition above outlined provides for contribution by equal shares. Aetna here provides coverage up to $100,000, and Commercial provides coverage up to $300,000, and applying the contribution by equal shares, it is ruled that each company will contribute equally up to the sum of $200,000. If payment in excess of $200,000 is necessary, Commercial will contribute alone up to the limits of its coverage (that is, up to an additional $200,000). The Court rules on the requests for findings and rulings filed by Aetna as follows:

Granted: 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 17, 18, 19, 22, 23, 24, 25, 27, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44.

Denied: 15, 16, 20, 21, 26, 28, 29, 30, 31.

As set forth in its findings and rulings hereinabove outlined, the Court rules that the Aetna policy provides coverage and that Aetna is required to furnish coverage up to the limits of said policy in equal shares with Commercial. Costs and attorney's fees are awarded to neither party.

SO ORDERED.