Argued June 7, affirmed as modified September 28, 1960

# CIMARRON INSURANCE COMPANY, INC. *v.* TRAVELERS INSURANCE COM-PANY ET AL

355 P. 2d 742

*Joseph Larkin* and *John Gordon Gearin,* Portland,
argued the cause for appellant. On the brief with them

were Koerner, Young, McColloch & Dezendorf, Portland.

*Lamar Tooze,* Portland, argued the cause for respondents Travelers Insurance Company, Shell Oil Company and Cecil C. Daugherty. On the brief were Tooze, Kerr & Tooze, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, GOODWIN and HOLMAN, Justices.

ROSSMAN, J.

This is an appeal by the plaintiff, Cimarron Insurance Company, Inc., from a declaratory judgment which the circuit court entered in favor of the defendants, Shell Oil Company, Cecil C. Daugherty, Joe Bookshnis, Albert Sammons and three insurance companies (only one of whom, Travelers Insurance Company, is material to this appeal).

■ At the times material to this case the defendant Albert Sammons was a truck driver for the defendant Bookshnis who operates a fleet of motor trucks. February 6, 1955, the plaintiff Cimarron Insurance Company issued a policy of automobile insurance which covered the truck driven by Sammons and which designated Bookshnis as the named insured. The coverage clause of the policy, in addition to naming Bookshnis as the named insured, provided that others who used the vehicle with Bookshnis' permission were also insured. The exclusion clause of the policy denied liability on the part of Cimarron for an injury to "any employee of the insured while engaged in the employment * * * of the insured * * *." September 1, 1955, Sammons, as Bookshnis' employee, drove the truck to the Portland plant of the defendant Shell Oil Company to obtain a load of hot asphalt; and while Shell's employee

Daugherty was pouring the asphalt into the truck he negligently injured Sammons, so Sammons avers. Sammons has threatened to sue Daugherty and Shell Oil Company. The two defendants, just named, as additional or omnibus insureds demand that Cimarron protect them from Sammons' claim. Cimarron instituted this suit to secure a declaration of its duty.

The coverage clauses of the policy stated:

"I Coverage A—Bodily Injury Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."

"III Definition of Insured: With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. * * *"

A clause of the policy stated that "Use of the automobile for the purposes stated includes the loading and unloading thereof." It is conceded that the coverage clauses included Shell and Daugherty as insureds. Therefore, as we proceed we shall deem that Shell and Daugherty while using the truck came within the coverage clauses as additional or omnibus insureds. An omnibus insured is entitled to the same protection as the named insured.

■ Since the coverage clauses accepted Shell and Daugherty as additional insureds those two defend-

ants would be entitled to the policy's protection against the claim presented by Sammons unless some other provision of the policy excluded them from it. Cimarron depends upon the exclusion clause which we have mentioned and argues that the clause denies Shell and Daugherty protection from liability to Sammons. The purpose of an exclusion clause is the opposite of that of a coverage clause. A coverage clause brings within the protection of a policy some one favored by the policy, such as a person who uses the automobile mentioned in the policy with the policyholder's permission. On the other hand, the effect of an exclusion clause is to deny the protection of the policy to some one who, but for the denial, would be an insured. The exclusion clause of the policy now before us excludes from coverage "injury to  *  *  *  any employee of the insured while engaged in the employment  *  *  *  of the insured."

Cimarron claims that Bookshnis was "the insured" and after pointing to the fact that Sammons was Bookshnis' employee argues that the policy's exclusion clause rejected from the policy's protection all claims for an injury which an employee incurred in the course of his employment. Shell and Daugherty argue that the exclusion clause does not refer to them. They claim that unless the injured man, in a policy such as this one, was the employee of the insured who invokes the protection of the policy the insured, whether he was the named insured or an omnibus insured, is entitled to the policy's protection. Sammons was not an employee of Shell or of Daugherty, they being the omnibus insureds who seek the policy's protection. At the time of Sammons' injury Bookshnis was not the only insured. At that time there was (1) a named insured, Bookshnis, and (2) two omnibus insureds, Shell

and Daugherty. The argument is advanced that it would be at least as reasonable to regard the additional insureds as "the insured" as it would be to treat the named insured as "the insured." The defendants declare that the best that can be said for Cimarron's position is that the term "the insured," as employed in the exclusion clause, does not indicate with clarity whether it designates the named insured (Bookshnis) or the additional insureds (Shell and Daugherty) who invoke the protection of the policy. They argue that since the term "the insured" is therefore ambiguous as to the person to whom it refers the court should embrace the rule that an ambiguity must be resolved against the party who incorporated it in the instrument, which in this instance is Cimarron.

We take the following from the brief submitted by Cimarron:

"Joe Bookshnis' trucking operations were covered by the Oregon Workman's Compensation Act, and Sammons received compensation from this source, so that he is not and could not make any claim against Bookshnis. Shell has rejected the Act, but its premises were subject to the Act and also subject to the provisions of the Employer's Liability Act."

The defendant-respondent Travelers Insurance Company had issued to Shell a policy of liability insurance which provided coverage for that insured and also omnibus coverage for its employees.

The challenged declaratory judgment reads as follows:

"By virtue of the plaintiff's policy of insurance * * * the plaintiff is obligated to pay on behalf of the defendants Shell Oil Company and Cecil C. Daugherty all sums which they or either of them

might or have become legally obligated to pay as damages because of bodily injury * * * sustained by the defendant Albert Sammons in the accident which occurred on or about 1 September 1955 at the premises of the defendant Shell Oil Company in the City of Portland * * *.

"As to the defendants Travelers Indemnity Company, Travelers Fire Insurance Company, Joe Bookshnis and Albert Sammons, the plaintiff's complaint be, and the same is hereby, dismissed and the plaintiff is nonsuited as to said defendants only."

Travelers Indemnity Company and Travelers Fire Insurance Company wrote no policy of insurance which has any bearing upon this case. However, defendant-respondent Travelers Insurance Company wrote the policy which we have mentioned and is a party to this appeal.

The plaintiff-appellant presents these two assignments of error:

"The court erred in declaring and adjudging that the insurance policy issued by plaintiff to Bookshnis afforded liability insurance to Shell and Daugherty for the accident of September 1, 1955, in which Sammons was injured."

"The court erred in ruling that plaintiff's insurance policy affords 'primary coverage' for this accident and in not ruling that plaintiff is liable only for that part of the loss as its policy limits bear to the limits of all the insurance, including the Travelers' policy."

Possibly it is well at this point to take note of the following additional provisions of the policy.

"18. Other Insurance—*Coverages A, B, D, E, F, G, H, I and J*: If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable

limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; * * *"

"Notice of accident—Coverages A, B and C: When an accident occurs wherein notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable * * *."

■ The pivotal issue is: to whom does the term "the insured" allude? Does it refer to the named insured, Bookshnis, or does it refer to the additional (omnibus) insureds, Shell and Daugherty? The questions just stated must be answered because clause (d) provides, as we have seen by quotation from it, that the policy does not afford "the insured" any protection for an injury to his employee suffered while engaged in his employment. We do not believe that exclusion clause (e) is applicable to this case. In Oregon workmen's compensation is payable out of our Industrial Accident Fund. Shell and Daugherty were not contributors to the fund.

■ Since it is within the province of the parties to a policy of insurance to determine for themselves who shall be protected and the extent of the protection, exclusion clauses must be given their intended effect: *I. L. Logging Company v. Manufacturers and Wholesalers Indemnity Exchange,* 202 Or 277, 273 P2d 212, 275 P2d 226, and *Clark Motor Co. v. United Pacific Insurance Co.,* 172 Or 145, 139 P2d 570. The problem which awaits solution appears to be nothing else than one of the interpretation of the exclusion clauses, more particularly the words "the insured."

Many other courts have been faced with the problem that this case submits. The brief filed by Cimarron, in referring to the question submitted by the exclusion

clause, concedes "there is a split of authority on this question." The courts that have passed upon cases similar to the one at bar frequently mention the division in the authorities. For example, *General Aviation Supply Co. v. Insurance Company of North America,* 181 F Supp 380, states:

> "The authorities are divided. See the discussion and citation at 50 A.L.R.2d 78, loc. sit. 97, § 6. One group holds that an employee of an insured, other than the insured seeking protection, is not within the language of the exclusion. The other group holds that if the injured party is an employee of any person who is insured under the policy, the exclusion is applicable, although he may not have been an employee of the person committing the tort."

██ It is clear that there is a division in the authorities as to which insured is designated by the term "the insured." Appleman, Insurance Law and Practice, § 7404, says:

> "The very fact that a number of courts have reached conflicting conclusions as to the interpretation of a contract provision is frequently considered evidence of ambiguity."

American Jurisprudence, Vol 29, § 260, Insurance, in referring to the rule that ambiguities are resolved against their creators, states:

> "* * * Conversely, the rule does apply where the existence of an ambiguity is shown by the fact that various courts in construing the language in question have arrived at conflicting conclusions as to the correct meaning, intent and effect thereof."

The fact that some courts hold that the words "the insured" designate the policyholder or named insured, while other courts of equally high rank deem that the

words allude to the insured who seeks the policy's protection evinces that the words are not free from ambiguity and uncertainty. Ambiguities are generally resolved against the party who prepared the instrument. We take the following from *Equitable Life Insurance Co. of Iowa v. Gerwick,* 50 Ohio App 277, 197 NE 923:

"Where the language of a clause used in an insurance contract is such that courts of numerous jurisdictions have found it necessary to construe it and in such construction have arrived at conflicting conclusions as to the correct meaning, intent, and effect thereof, the question whether such clause is ambiguous ceases to be an open one. The rule in Ohio is that ambiguous langauge is to be construed most strongly against the party selecting the language and is especially applicable to contracts executed subsequently to such conflicting constructions. Policies, which are prepared by the insurance company, and which are reasonably open to different interpretations, will be construed most favorably to the insured."

One of the decisions which held that "the insured" means the assured who invokes the protection of the policy is *Pleasant Valley Lima Bean Growers v. Cal-Farm Insurance Company,* 142 Cal App 2d 126, 298 P2d 109. The decision, after taking note of the great amount of case law available upon the subject, stated:

"* * * We feel, however, that it is not necessary to rely on the authority of any of those cases in determining the question, as it can be decided by an examination of the exclusion clause itself under general principles of insurance law. In the first place, since the Brucker policy was drafted by Cal-Farm, any ambiguities or uncertainties the policy might contain are to be construed against the insurer. Arenson v. National Automobile & Casualty Ins. Co., 45 Cal.2d 81, 83, 286 P2d 816. 'If

the insurer uses language which is uncertain any reasonable doubt will be resolved against it; if the doubt relates to extent or fact of coverage, whether as to peril insured against [citing cases], the amount of liability [citing cases], *or the person or persons* protected [citing cases], the language will be understood in its most inclusive sense, for the benefit of the insured.' Continental Cas. Co. v. Phoenix Const. Co., 46 Cal.2d —, 296 P.2d 801, 809. (Emphasis added.) Where the language of the policy is reasonably capable of two constructions, it should be construed in the insured's favor. Linnastruth v. Mutual Benefit, etc., Ass'n, 22 Cal.2d 216, 137 P.2d 833. * * *"

The difference in the judicial reasoning of the many jurisdictions which accounts for the split in the authorities mentioned in Cimarron's brief is well illustrated by the treatment which *Maryland Casualty Co. v. New Jersey Manufacturers Casualty Insurance Co.* received in its progress through the New Jersey courts. The facts and policy provisions in that case were substantially the same as in the case before us. They are set forth in the decisions of the Superior Court, 43 NJ Super 323, 128 A2d 514, 10 Automobile Cases 2d 824, and in that of the Apellate Division of the New Jersey Superior Court, 48 NJ Super 314, 137 A2d 577. The Superior Court held that the term "the insured" meant the named insured. In giving its reasoning it quoted with approval the following from *Standard Surety and Casualty Co. of New York v. Maryland Casualty Co.*, 281 App Div 446, 119 NYS 2d 795:

"The Wisconsin construction urged here completely emasculates the significance of the exclusion provisions as far as the *insurer* is concerned. If we adopt the reasoning of the Wisconsin court and read into the exclusion clause the limitation of

that clause measured by situations arising after the injury (where the claim is brought against the injured's employer), we are in effect holding that the *insurer* has agreed not to defend or indemnify the named insured against claims arising out of injuries to his employees, but that the *insurer will defend another insured against that very risk. To state the proposition is to recognize its fallacy.* If not wholly inconceivable, it is certainly not reasonable that the insurer even remotely contemplated that its liability for the very risk excluded would depend upon the choice by the *injured employee* of the party to be made defendant."

After expressing itself to the above effect through its quotation from the New York decision, the court (New Jersey) added:

"The strenuous effort extended by both insurance companies in the case *sub judice* to justify their respective interpretations of the insurance policy in question justifies the observation that insurance underwriters have been slow to correct policy expressions which have been the subject of diverse interpretation in the many courts of this nation. This failure on their part has resulted in much confusion, as an examination of the many cases cited by all parties will reveal. * * *"

The Appellate Division of the New Jersey Superior Court (48 NJ Super 314, 137 A2d 577) reversed the Superior Court. The court took the position that the term "the insured" referred to more than one person without making clear the identity of the person to whom reference was made. It mentioned that when the meaning of words in an insurance policy is doubtful or uncertain the insured should have the benefit of a favorable construction. It took the position that "the insured" denoted the insured who invoked the

protection of the policy. In so holding, the Appellate Division said:

"In the light of these considerations, we are of the opinion that the literal construction which the trial court gave to the exclusionary language ran counter to its obvious purpose. We do not agree that plaintiff was not entitled to the indemnification or contribution it sought simply because the injured employee of the named insured was entitled to workmen's compensation benefits. * * * We hold that the reference to 'the insured' in the quoted exclusionary clauses applies only to the particular insured, whether the named insured or an additional insured under the omnibus clause, whose employee is suing him on account of the injury in question notwithstanding that the injury was compensable through workmen's compensation payments. Where, as here, an employee of the named insured was not suing the named insured, who had nothing to do with the negligent action which gave rise to the employee's claim, but sued an additional insured who was not his employer, the obvious purpose of the exclusionary clauses is not implicated.

"As we read the exclusion clauses, the basis for exclusion is the existence of an employer-employee relationship between the insured defendant and the injured claimant, and the insured defendant must be identified as the employer before he can be subject to exclusion. Absent an employer-employee relationship between the insured and the injured, exclusion does not apply to the insured, and the latter remains under the protective coverage of the policy."

When the case reached the Supreme Court of New Jersey the Appellate Court was affirmed: 28 NJ 17, 145 A2d 15.

We shall quote from the authorities no further. The following decisions held that the term "the in-

sured" means the assured who invokes the policy's protection unless an employer-employee relationship existed between that person and the injured claimant. *Spurlock v. Boyce-Harvey Machinery, Inc.,* La App, 90 So2d 417; *General Aviation Supp. Co. v. Insurance Company of North America,* 181 F Supp 381; *Canadian Indemnity Co. v. State Automobile Ins. Ass'n.,* 174 F Supp 71; *Pullen v. Employers' Liability Assurance Corp.,* 230 La 867, 89 So2d 373; *Pleasant Valley Lima Bean, etc., Ass'n. v. Cal-Farm Ins. Co.,* 142 Cal App 2d 126, 298 P2d 109 (D.Ct.App. 1956); *Motor Vehicle Cas. Co. v. Smith,* 247 Minn 151, 76 NW2d 486 (Sup. Ct. 1956); *New v. General Casualty Co.,* 133 F Supp 955 (D.C.M.D. Tenn 1955); *Sandstrom v. Clausen's Estate,* 258 Wis 534, 46 NW2d 831 (Sup.Ct. 1951); *McMann v. Faulstich,* 259 Wis 7, 47 NW2d 317 (Sup. Ct. 1951); *Kaifer v. Georgia Casualty Co.,* 67 F2d 309 (9 Cir. 1933); *Ginder v. Harleysville Mutual Cas. Co.,* 49 F Supp 745 (D.C.E.D. Pa 1942), affirmed 135 F2d 215 (3 Cir., 1943); cf. *Lumber Mutual Cas. Ins. Co. of New York v. Stukes,* 164 F2d 571 (4 Cir., 1947); and see, generally, Annotation 50 ALR2d 78, §§ 6(a) and (c), 7, pp 97, 101, 104 (1956); "Who is 'The Insured'?" 24 U of Kansas City L Rev. 65.

The following decisions held that the term "the insured" refers to the named insured: *Travelers Insurance Co. v. Ohio Farmers Indemnity Co.,* 262 F2d 132; *St. Paul-Mercury Indemnity Co. v. American Fidelity and Casualty Co.,* 248 F2d 509; *Standard Oil Company of Texas v. Transport Insurance Co.,* Tex Civ App, 324 SW2d 331; *Vaughn v. Standard Surety & Casualty Co.,* 27 Tenn App 671, 184 SW2d 556 (Ct App 1944); *Gibbs v. Employers Mutual Liab. & Ins. Co. of Wisconsin,* 224 NC 462, 31 SE2d 377 (Sup.Ct. 1944); *Pearson v. Johnson,* 215 Minn 480, 10 NW2d 357 (Sup.

Ct. 1943); *Webb v. American Fire & Cas. Co.*, 148 Fla 714, 5 So2d 252 (Sup.Ct. 1941); *Associated Indemnity Corp. v. Wachsmith*, 2 Wash2d 679, 99 P2d 420, 127 ALR 531 (Sup.Ct. 1940); *Birrenkott v. McManamay*, 65 SD 581, 276 NW 725 (Sup.Ct. 1937); *Standard Surety & Casualty Co. of New York v. Maryland Casualty Co.*, 281 App Div 446, 119 NYS2d 795 (App Div 1953) (followed in *Greaves v. Public Service Mutual Ins. Co.*, 156 NYS2d 754 (Sup.Ct. Spec. Term 1956)), but see *Morgan v. Greater New York Taxpayers Mutual Ins. Ass'n*, 305 NY 243, 112 NE2d 273 (Ct. App. 1953), decided soon after the Standard Surety case and which would seem to have impliedly overruled it.

For reasons which Bookshnis and Cimarron found sufficient the policy which Cimarron issued to Bookshnis included the omnibus clause whereby others in addition to Bookshnis were afforded the protection of the policy. It is apparent from the facts of which we have taken notice that policies of automobile insurance commonly include omnibus clauses succeeded by exclusion provisions. Manifestly, the omnibus and exclusion clauses must be given their intended effect so far as that is discernible. It is conceded that the omnibus clause deemed Shell and Daugherty additional insureds. But Cimarron argues that the exclusion clause rejected them from the protection which they seek. If the exclusion clause is to have that effect we will have to ignore the ambiguity in the term "the insured" and hold that the term can refer only to the policyholder. We will also have to shut our eyes to the fact that Shell and Daugherty were insureds.

The policy in question employs in many places the terms "the insured" and "the named insured." An occasional clause or paragraph uses both terms. Evi-

dently they are not employed synonymously. Although it is perplexing at times to detect the draftsman's distinction in their meaning, he apparently employed the term "the named insured" where he wished to designate the policyholder, and the term "the insured" where he had in mind the additional insured or both the named insured and the additional insured. The facts just mentioned are supplementary factors that indicate that the term "the insured" where it appears in the exclusion clause is ambiguous.

If the purpose of Cimarron in inserting in the exclusion clause the term "the insured" was to exclude from protection omnibus insureds such as Shell and Daugherty, it is evident that it made an unfortunate choice of words. For many years before it selected those words courts had experienced difficulty with them and had referred to them as ambiguous. In construing policies containing the words many decisions held that an employee of an insured, other than the insured who seeks the protection of the policy, is not within the terms of the exclusion clause. Then came decisions such as *Pleasant Valley Lima Bean etc. Ass'n. v. Cal-Farms Ins. Co.,* supra, which dwelled upon the ambiguity and resolved it against the insurer.

We think that the term "the insured" where it appears in the exclusion clause is ambiguous and that, therefore, since Cimarron is the one who included it in the policy the ambiguity must be resolved in favor of Shell and Daugherty.

■ Cimarron next contends that it was not given timely notice of Sammons' injury. The policy provides, as we have seen, that "when an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable * * *." Sammons sustained his

injury through accident September 1, 1955. The trial judge, in a carefully prepared memorandum opinion, held that on October 19, 1955, Shell mailed to Cimarron a letter which notified Cimarron that "Albert Sammons, a transport truck driver for the Joe Bookshnis Transportation Company * * * was injured while his truck was being loaded with asphalt on September 1, 1955, at the Shell Oil Company Willbridge Terminal by Mr. Cecil C. Daugherty, a Shell employee." The letter explained that its purpose was "to put you on notice of the claim inasmuch as Mr. Daugherty would be an insured of your company under Mr. Bookshnis' automobile policy." By another letter mailed December 13, 1955, Shell again notified Cimarron of the accident, of its time, place, and victim. It stated: "The above information is to put you on notice of the claim inasmuch as Mr. Daugherty and Shell Oil Company would be an insured on your company under Mr. Bookshnis' automobile policy."

We think that the trial judge's holding that the above letters were mailed to and received by Cimarron's agent is supported by the record.

In *Hoffman v. Employers Liability Assurance Corporation,* 146 Or 66, 29 P2d 557, this court said: "The purpose of requiring notice to be given is to enable the defendant to resist false and exorbitant claims." That decision points out that a claimant, in giving notice, must act with reasonable diligence.

The memorandum opinion indicated that Shell lacked knowledge that it had coverage under the Cimarron policy and was therefore excused for its failure to have given Cimarron notice sooner. The Findings of Fact state:

"The defendant Shell Oil Company and Cecil C. Daugherty gave timely notice to plaintiff of the

accident of September 1, 1955, in which the said Sammons claims to have been injured, and said notice was in proper form, and the time and form of said notice complied with the conditions and requirements of plaintiff's said policy No. AC-148863UIU."

That finding, in our belief, resolved nothing but an issue of fact. Since we deem it supported by substantial competent evidence we are bound by it.

■ Finally, Cimarron argues that the trial judge erred "in not ruling that plaintiff is liable only for that part of the loss as its policy limits bear to the limits of all the insurance, including Travelers' policy."

Travelers' policy stated:

"11. Other Insurance. If the insured has other insurance against a loss covered by this policy, the insurance under this policy shall be excess insurance over any other valid and collectible insurance available to the insured."

We have quoted the part of Cimarron's policy which states that if the insured has other insurance against a loss covered by the policy "the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limits of liability of all valid and collectible insurance against such loss."

*Lamb-Weston, Inc. v. Oregon Automobile Insurance Co.,* 219 Or 110, 341 P2d 110, 346 P2d 643, which was decided after the circuit court had entered its declaratory judgment, demands a holding that Cimarron and Travelers must pro-rate the loss in the ratio which the limits of their respective policies bear to the total coverage.

The foregoing disposes of all the issues submitted by this appeal.

The declaratory judgment, apart from the modification which requires both insurance companies to share the loss, is affirmed.

Costs allowed to neither party.