Argued April 17; resubmitted in banc without oral
argument July 24, reversed; judgment and decree vacated;
remanded with instructions July 30, reconsideration denied
September 7, petition for review denied October 9, 1979

## PHILIPPI MOTOR CO.,
### *Respondent,*
### *v.*
## INVESTORS INSURANCE CORPORATION,
### *Appellant.*

### (No. 103199, CA 12472)

597 P2d 1267

 ──────

Peter C. Richter, Portland, argued the cause for appellant. On the briefs were James N. Westwood, Clifford N. Carlsen, Jr., and Miller, Anderson, Nash, Yerke & Wiener, Portland.

Ken L. Betterton, Salem, argued the cause for respondent. With him on the brief were Murley M. Larimer, Stayton, and Enfield and McConville, Salem.

THORNTON, J.

**THORNTON, J.**

This appeal involves a controversy between Philippi Motor Company (Philippi) and Investors Insurance Corporation (Investors) over construction of one of Investors' credit life insurance policies issued by Philippi to the late William V. Conrady in connection with Conrady's purchase of a new automobile from Philippi one week before Conrady's death.

Philippi brought this declaratory judgment action against Investors to determine whether Investors was liable to pay benefits on the subject policy.[1] Philippi claimed that it issued the policy to Conrady in accordance with the terms of its agreement with Investors and that Investors was liable. Investors alleged as an affirmative defense that in extending coverage to Conrady, Philippi had exceeded its authority as Investors' agent and was therefore liable for payment of the benefits, *i.e.,* satisfaction of the debt owing to Philippi by Conrady. The case was submitted to the court on stipulated facts, which are set out in the margin.[2] The

---

[1] In its brief Investors explained this type of insurance as follows:

"Credit life and credit health insurance policies are typically offered by insurers as group policies, with the insured persons being the purchasers of autos or other merchandise purchased on time payment plans. By the terms of such a policy, an insurer undertakes to pay part or all of the outstanding debt on the merchandise (to the purchaser's creditor as beneficiary) if the purchaser should die or become disabled before the merchandise is paid for. The creditor is ordinarily the go-between who solicits the purchaser, ascertains the purchaser's eligibility for insurance coverage, collects the premium and transmits it to the insurer (less a commission, which the creditor retains)."

[2] "1. Philippi Motor Co. ('plaintiff') is an Oregon corporation duly organized and registered in the state of Oregon engaged in the sale of automobiles and authorized to solicit credit life insurance in the state of Oregon.

"2. At all times material to the complaint in this matter Investors Insurance Corporation ('defendant') was and is an Oregon corporation duly licensed and authorized to engage in the business of credit life insurance in Oregon.

"3. On or about November 1, 1971, plaintiff applied to defendant for a group credit insurance policy.

"4. Subsequent to November 1, 1971, a group policy was issued to plaintiff by defendant ***.

"5. The above group policy defines an eligible insured debtor as follows:

" 'Any natural person who is indebted to the Creditor *** and who is actively employed or unemployed solely because of seasonal lay-off at the time the indebtedness is incurred, is eligible to become an Insured Debtor under this policy ***.'

"6. On June 11, 1975, defendant sent to plaintiff and plaintiff received a letter in regard to eligibility requirements for insured debtors under the group policy. This letter stated there had been a problem with credit life insurance being sold to ineligible persons and restated the eligibility requirements for an individual to get credit life insurance. One of the requirements restated was that the debtor 'must be actively employed or unemployed solely because of seasonal lay-off at the time the indebtedness is incurred.'

"7. On April 7, 1976, plaintiff sold to William V. Conrady ('Conrady') a 1976 Ford Mustang automobile, pursuant to Oregon Automobile Retail Installment Contract ***. Conrady financed $3,595.32 of the price of the automobile and, in connection with that financing, a credit life insurance certificate on the life of Conrady was issued ***. The certificate was issued in connection with the group policy ***.

"8. Conrady had worked as a yard master for Southern Pacific Railroad until December, 1974, at which time he suffered back pain and decided to take a vacation and to consult a doctor. Thereafter, Conrady did not return to work.

"9. In January, 1975, Conrady was on paid vacation from Southern Pacific Railroad and during that month underwent numerous medical examinations. In April, 1975, he was diagnosed as having cancer. Conrady died due to the cancer on April 16, 1976.

"10. After his paid vacation in January, 1975, Conrady did not return to his job as yard master and, from February, 1975, until his death, he was on sick leave from Southern Pacific Railroad.

"11. Conrady's income from February, 1975, until his death was derived from payments from the Aetna Insurance Company and from the Southern Pacific Railroad retirement fund.

"12. On March 3, 1976, Conrady was hospitalized for cancer and a fractured hip.

"13. On July 9, 1976, Southern Pacific Railroad sent a letter *** which states in part as follows:

[214]

" 'Per our phone conversation of this date, I hereby certify by means of this letter, that on April 7, 1976, William Conrady was an employee of Southern Pacific Transportation Company in Albany, Oregon.

" 'Yours truly,
(s) John M. Gallaway
Trainmaster'

"14. On April 7, 1976, the day he purchased the automobile from plaintiff, Conrady had been released from the hospital but was bedridden in his home. The extent of his activity was that he was able to sit up for short periods of time to eat his meals. On April 15, 1976, Conrady was again hospitalized and he died the next day.

"15. Mrs. Conrady and her daughter were the persons who negotiated the purchase of the 1976 Ford Mustang with the plaintiff. William Stanley was the salesman of the plaintiff who negotiated the sale with Mrs. Conrady and her daughter. After the sale had been discussed, Stanley accompanied Mrs. Conrady and her daughter to the Conrady house where Conrady signed the papers associated with the sale.

"16. Stanley was acquainted with Conrady and knew that he had cancer and was bedridden at the time the car was purchased. Conrady told him that he, Conrady, was 'going to whip this thing,' (the cancer) or words to that effect. He further knew that one of the features that Mrs. Conrady and her daughter were looking for in a car was that the car have a hatchback to make it easier to get Conrady in the car to transport him to the hospital.

"17. Mrs. Conrady, during negotiations in regard to the car, asked about credit life insurance and was told by Stanley that it was available. Mrs. Conrady made further inquiries about the availability of credit life insurance in light of Conrady's illness. Conrady also inquired about the availability of credit life insurance in light of his illness when Stanley came to his house to have him sign the papers. Stanley indicated if Conrady was employed there would be no problem in obtaining credit life insurance.

"18. Stanley made no inquiries of anyone at defendant in answering the Conradys' questions on credit life insurance.

"19. The only limit on eligibility for credit life insurance that Stanley was aware of was that the debtor could not be over 65 years of age.

"20. Clarence Frederickson, in April, 1976, and at the present, is the sales manager for plaintiff. He has been employed by plaintiff for 22 years and has been sales manager for 5 years. One of his duties is that he must approve all sales.

"21. Frederickson approved the sale which is involved in this action.

court found for Philippi and ordered Investors to pay the disputed sum plus costs. The court's conclusions are also set out below.[3]

The parties agree that the case turns on the requirement in the group policy that the debtor be "actively employed." Investors contends that the term is unambiguous, but that even if there is some ambiguity, the rule of *Cimarron Ins. Co. v. Traveler's Ins. Co.,* 224 Or 57, 355 P2d 742 (1960), that "[a]mbiguities are generally resolved against the party who prepared

"22. In April, 1976, the only requirements for eligibility for credit life insurance that Frederickson used were that the debtor had been employed for six months and that the debtor be less than 66 years of age.

"23. Frederickson said no directives or instructions were ever given by the management of plaintiff to him or other people regarding the eligibility requirements for credit life insurance."

[3] "I find for plaintiff. The decision is based upon the facts stipulated and issues presented by the briefs. Other issues that might be raised, either as a factual question or by law are not considered.

"Defendant must be responsible for the words it chose to use in limiting the eligibility of applicants for its insurance. Strictly construed, as requested by defendant, the language would exclude any person on sick leave or vacation pay. I do not believe the language was intended to be that restrictive. If so, defendant should have issued instructions that it would so interpret its contract. Instead, its letter of instruction of June 11, 1975, *** is as ambiguous as its contract. If defendant wanted to limit its eligibility to those who were, as of the date of the application, actually performing work for an employer it could easily have said so. It did not. In fact, the letter left the interpretation to plaintiff.

"[The Automobile Retail Installment Contract] lists Conrady's 'employment' as Southern Pacific. Plaintiff had no reason to doubt this. In the absence of more specific instructions from defendant requiring plaintiff to obtain more specific information, this appears to meet the eligibility as defined by defendant.

"On the second issue, the cause [*sic*] involving the typical insurance agent appears really not applicable. This situation presents different factual and, resulting, legal problems. And cases like *Manufacturers Casualty Ins. Co. vs. Martin-Lebreton Insurance,* 242 F2d 951 (5th Cir), are not applicable because here we do not have the problem of an agent knowingly violating specific limits of authority. In fact, for all the instructions issued to plaintiff, it had followed defendant's requirements. *Cimarron Ins. Co. vs. Traveler's Ins. Co.,* 224 Or 57, appears reasonably applicable here."

the instrument" (224 Or at 66) would not apply. Investors asserts that rule is inapplicable because the term "actively employed" was adopted from a regulation of the Oregon Insurance Division.

■ Contrary to the trial court, we conclude that the meaning of the term "actively employed" is clear and unambiguous in the context of the present case, and does not include a person in Conrady's known physical condition and inactive employment status. Where words in an insurance policy have a plain and ordinary meaning, they must be given effect in accordance therewith. *Twilleager v. N. A. Accident Ins. Co.,* 239 Or 256, 260, 397 P2d 193 (1969).

According to Webster's New International Dictionary 22 (3d ed 1971), the word "active" means:

"Characterized by action rather than by contemplation or speculation (an active man)."

■ Placing the word "actively" before "employed" must have been for the purpose of adding some further meaning — distinguishing between persons who were actually engaged in performing work for an employer on the date in question and those who were not. It follows, therefore, that an "actively employed" person means one who is actually on the job and performing the customary work of his job, as opposed to one who is inactively employed.

It was the obvious purpose of the policy provision in issue to permit the insurance to become effective only in the event that the applicant's health was such as to permit him to be "actively employed." Stated differently, it was the clear purpose of this provision to prevent the insurance from being effective as to any person who was so seriously ill as to be continuously confined to his bed at home and unable to be at work.

While this issue has apparently not been considered by the appellate courts in this state, an examination of the authorities in other jurisdictions in similar cases persuades us that the holding of the trial judge is in

[217]

error. For example, in *Boyer v. Travelers Ins. Co.,* 7 Cal 2d 615, 61 P2d 925 (1936), a case involving a group life policy, the policy required that the applicant must be "actually at work" on the date that coverage was to commence. The applicant was, however, in the hospital on that date, having just suffered a heart attack. He died there shortly thereafter without ever having returned to work.

The court denied coverage, holding that in order for the insurance to become effective as to an employe, his health must permit him to be actually at work on the specified date following the making of the application and doing some of the things for which he was employed.

Similarly, in *Robinson v. North American Life & Cas.,* 215 Cal App 2d 111, 30 Cal Rptr 57 (1963), also a case involving a group life insurance policy, the court held that an applicant who was in the hospital at the time he applied for coverage was not "actively at work." Additionally, the court said that the word "actively" was not ambiguous and the term meant the opposite of "passively." The court said:

> "Plaintiff also contends that the word 'actively' was ambiguous. With this we cannot agree. Actively — meaning the opposite side of passively — has no double connotation but merely denotes some activity. Such word is in common usage and, as applied to work of a proprietor of a service station, clearly means some actual engagement in work. * * *" 215 Cal App 2d at 117.

Also, in *Williams v. Metropolitan Life Insurance Company,* 448 SW2d 295, 298-99 (Mo App 1969), the court said that the phrase "actively at work" in a group life policy means that an employe is present at his usual place of employment, performing his usual and ordinary functions and duties or otherwise working at his employment under the supervision and direction of a supervisor.

[218]

Again, in *Jackson v. Ins. Co.,* 34 Ohio St 2d 138, 296 NE2d 679 (1973), the court said that where a decedent was not performing his job or assigned duties on the date he would have become eligible for coverage because the plant was closed down for annual inventory, he was not "actively at work" and therefore did not qualify for coverage under the provisions of a group life policy. To the same effect, *see Elsey v. Prudential Ins. Co. of America,* 262 F2d 432 (10th Cir 1958); *Augusta v. John Hancock Mutual Life Ins. Co.,* 11 Misc 2d 111, 170 NYS2d 908 (Mun Ct 1958); *Blum v. Prudential Ins. Co. of America,* 132 NJ Super 204, 333 A2d 277 (1975); *Landis v. American Potash,* 78 Nev 424, 375 P2d 402 (1962).

We hold that plaintiff wrongfully represented that Conrady was eligible for coverage and consequently should be held liable for the loss.

Judgment and decree vacated. Reversed and remanded for entry of a new judgment and decree consistent with this opinion.

**BUTTLER, J.,** specially concurring.

While I concur in the result reached by the majority, I disagree with the analysis by which the result is reached.

First, it should be made clear that this action is not one by the insured or his estate. It is apparent that the insured made a full disclosure to Philippi, Investors' agent, and Philippi issued the policy with apparent authority to do so. Therefore, we need not construe the policy, indulging in a construction in favor of the insured.

Second, it should be made clear that the only issue is whether Philippi acted within its authority as agent for Investors in issuing the policy. In this connection, it is apparent that Philippi had conflicting interests in that it is the beneficiary of the policy it issued to one of its purchasers who was dying of cancer, and was also

the agent of the insurer. This conflict is inherent in credit life insurance where the creditor is the insurer's agent. Under these circumstances, Investors' instructions to Philippi that eligibility for insurance required that the debtor be "actively employed" at least placed a duty on Philippi to inquire of Investors whether, under the agreed facts, the debtor was eligible. No inquiry was made, and Philippi ought not to benefit by its failure to carry out its agency with complete fidelity.

Accordingly, I would put the loss on Philippi without construing the insurance policy, which is not involved here.

Lee and Gillette, JJ., join in this specially concurring opinion.

**JOSEPH, J.,** dissenting.

The majority, with two voices, has struggled for a result that satisfies some feeling that the plaintiff ought not to benefit from its act of selling (credit) life insurance to a dying man. The principal opinion holds that the case hinges on the meaning of the words "actively employed" and says they are clear and unambiguous and mean that the insurance policy only covers "one who is actually on the job and performing the customary work of his job." That ought to cause some unease among the possible thousands of insureds who bought — or were sold — this kind of insurance. To achieve that result, Judge Thornton finds to control a quite different term: "actually at work." He concludes that Philippi "wrongfully represented that Conrady was eligible for coverage and consequently should be held liable for the loss."[1] That is, Philippi is liable for having wrongly applied a clear and unambiguous term as to the meaning of which there are at least three views on this court.

---

[1] Of course it is presumably the family or the estate of Mr. Conrady who will ultimately suffer the burden of having no insurance coverage to pay for the car.

The reader should read carefully Judge Thornton's footnote 1 (which defines the sort of insurance involved) and then footnote 2, which contains the stipulated facts to which we are restricted. Note carefully the policy language in paragraph 5 and the carrier's specific (and identical) advice to its agents in paragraph 6. Then, look at paragraphs 9-11, 13[2]-14, 16-17: Nothing in those stipulated facts charges Philippi with knowing that Conrady would never return to normal life or that he was terminally ill. Finally, the second paragraph of the trial court's conclusions should be read.

The narrow, and only, issue is whether Philippi exceeded its authority as Investors' agent, which was the issue tendered by the carrier's affirmative defense. The case depends upon whether the phrase "actively employed" so clearly and unambiguously excluded Mr. Conrady from coverage that as a matter of law Philippi exceeded its authority when it issued the policy. If the term could reasonably be read in more than one way, and the insurance was properly issued under any such reading, the carrier cannot prevail on that affirmative defense.

Although Investors argues that the term did exclude from coverage a person of Mr. Conrady's position, it has not explained either in its briefs or in its argument before this court what that disqualifying position was. The policy term has no single obvious meaning, obviously. Of course, Investors does not argue that in order for a credit life insurance policy to be issued the insured must be on the job and actively working at the time he signs the papers, but it does argue that "actively employed" means "going to work on a regular basis." The group policy did not say "going to work on a regular basis": It said "actively employed." Moreover, Investors' suggested (unam-

---

[2] For the purposes of this case it matters not that the employer's letter was written after the issuance of the policy and after the insured's demise. The point is that, despite the sources of the insured's income, the railroad regarded him as employed at the time the insurance was written.

[221]

biguous) meaning would exclude a person who was off work because of a long or short term, but not terminal, illness or because he decided to take a few days off to go fishing, but who was still being paid. That is not a reasonable reading.

Investors' fundamental argument is that under all the circumstances, Philippi should not have issued a policy to Mr. Conrady, at least not without first consulting Investors. Judge Buttler would decide the case by agreeing with this assertion, and I cannot agree.[3] It overlooks the basic truths that the group policy established the eligibility requirements and that no duty to consult was ever imposed expressly or implicitly by the insurer. We ought not to say as a matter of law that Philippi exceeded its authority as established by the policy and the carrier's written instructions.[4] Both majority positions flatly contradict *Cimarron Ins. Co. v. Traveller's Ins. Co.,* 224 Or 57, 355 P2d 742 (1960).

I therefore dissent.

Schwab, C.J., joins in this dissent.

---

[3] His first point ignores the fact that Philippi is the beneficiary under the policy. It is therefore entitled to the benefit of the *Cimarron* rule, *infra.* That Philippi was an agent should not obscure recognition of its capacity as plaintiff here.

[4] Restatement 2d, Agency § 390 (1958) provides:

"An agent who, to the knowledge of the principal, acts on his own account in a transaction in which he is employed has a duty to deal fairly with the principal and to disclose to him all facts which the agent knows *or should know* would reasonably affect the principal's judgment, unless the principal has manifested that he knows such facts or that he does not care to know them." (Emphasis added.)

Investors concedes that provision is not applicable because it did not have discretion to reject any individual applicant for credit life insurance who met the eligibility requirements stated in the group policy which Philippi had purchased. As Investors noted in its brief:

"[D]efendant was obligated to insure 'Any natural person who is indebted to [plaintiff] *** and who has not attained age 66 at the inception of the indebtedness, and who is actively employed *** at the time the indebtedness is incurred.' "