Argued and submitted October 4, 1983, affirmed January 11, 1984

## COMMERCIAL BANKERS LIFE INSURANCE COMPANY et al,
*Appellants,*

*v.*

## KIRK et al,
*Respondents.*

(16-81-08333; CA A26742)

675 P2d 1069

Stephen R. Jaffe, Eugene, argued the cause for appellants. With him on the briefs was Hershner, Hunter, Miller, Moulton & Andrews, Eugene.

Michael W. Doyle, Eugene, argued the cause for respondent John A. Kirk, Jr. With him on the brief was Altstatt & Doyle, P.C., Eugene.

William H. Martin, Eugene, argued the cause for respondent Valley State Bank. With him on the brief was Husk, Gleaves, Swearingen, Larsen & Potter, Eugene.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

The plaintiffs[1] in this declaratory judgment action are the issuers of credit life policies insuring the life of John A. Kirk, Sr. (Kirk), as co-signer of a loan from defendant Valley State Bank to Kirk's son. At the time he co-signed the loan and applied through the bank for the insurance, Kirk was suffering from terminal cancer and, according to plaintiffs, was aware that he was reasonably certain to die during the term of the policies. Kirk died shortly after obtaining the coverage. Plaintiffs contend that the policies are invalid because of Kirk's failure to disclose the fact that his death was imminent. They also contend that the bank breached its duties as their agent by issuing coverage it had no authority to issue and by not disclosing to them facts of which it was aware regarding Kirk's health. Plaintiffs argue that the bank must therefore indemnify them for any benefits they are required to pay. The bank and defendant John A. Kirk, Jr., as Kirk's personal representative, counterclaimed for the policy benefits and attorney fees. The trial court granted summary judgments in favor of defendants.[2] Plaintiffs appeal, and we affirm.

Former OAR 836-60-020(4) (the regulation), which was in effect at the time of the material events, provided in effect that the high premiums plaintiffs were allowed to charge for credit life insurance could be considered reasonable only for coverage that:

"(a)  Excludes no deaths other than death by suicide within the first two years of the coverage; and

"(b)  *Is available to all debtors* not older than an applicable attained age limit, if any, that is at least 65 years if pertaining to the age at inception of the indebtedness, or at least 66 years if pertaining to the age at the scheduled maturity date of the indebtedness, *without evidence of insurability* other than the permissible requirement that at the time the indebtedness is incurred the debtor either be actively

---

[1] Plaintiff Industrial Life Insurance Company is not a party to the appeal. The term "plaintiffs" as used here refers to the appealing plaintiffs.

[2] The bank brought a third party action against Payment Insured Plan, Inc., a credit life insurance broker, seeking indemnity for any damages recovered against the bank by plaintiffs. The third party action was not decided by the judgment appealed from. The trial court certified the judgment as final "pursuant to ORS 18.125." *See* ORCP 67B.

employed or unemployed solely because of seasonal lay-off."
(Emphasis supplied.)

Plaintiffs acknowledge that, because of that regulation, neither they nor their agent could have *asked* for information about Kirk's health in connection with his application for coverage. They nevertheless argue that Kirk's failure to disclose his condition was a material misrepresentation or concealment sufficient to avoid the policies under ORS 743.042. Plaintiffs reason:

> "* * * It is not Plaintiffs' position that an applicant for credit life insurance must as a general rule volunteer information concerning the general state of his health. Plaintiffs concede that as a general rule and in the absence of inquiry, an insured is not under a duty to volunteer information when not requested to do so. However, there are exceptions to this general rule. An applicant for credit life insurance who knows that he is terminally ill and has no reasonable expectation of surviving the policy term is one such exception. The law imposes an affirmative duty upon such a person to disclose his knowledge of these facts, even in the absence of inquiry."

*But see Treit v. Ore. Automobile Ins. Co.,* 262 Or 549, 499 P2d 335 (1972); *McDaniel v. Ins. Co. of Oregon,* 243 Or 1, 410 P2d 814 (1966).

Defendants argue, *inter alia,* that the regulation not only prohibited plaintiffs from asking for health information from or about applicants, but also required them to issue coverage to otherwise eligible applicants regardless of any health problems the applicants might have. Plaintiffs respond:

> "It is evident that [the] Regulation prohibits only one thing, a credit life insurer cannot require that a potential borrower provide 'evidence of insurability' as a precondition to offering credit life insurance. The regulation falls far short of being a requirement that there exist an open offer by credit life insurers for acceptance of their coverage which results in a binding contract of insurance upon acceptance by a debtor satisfying the applicable age limitation. The Bank's sweeping interpretation of this Regulation is supported by neither the language or the purpose of the Regulation, nor is it supported by the statutory authority underlying the Regulation.

> "OAR 836-60-020(4)(b), by its own terms deals with what a credit life insurer may require of the insured. The only

evidence of insurability which can be required of the insured is evidence that the debtor either be actively employed or unemployed solely because of seasonal layoff i.e., an insurance company cannot require an applicant to submit to a physical examination or to answer health questions on the application. The Regulation is inapplicable where the insurer's agent has knowledge about the applicant's health which was volunteered by the applicant or which was obtained from other sources. The language of this Regulation certainly falls far short of a specific rule that a credit life insurer cannot decline coverage to any borrower meeting the age requirement, the rule advocated by the Bank. If the Insurance Commissioner had intended such a broad restriction on an insurer's right to decline coverage it would certainly have been a simple matter to draft a regulation to that effect. The Regulation as promulgated sharply restricts what an insurer may require from a prospective insured, but nowhere does it require an insurer to close its eyes to facts which it already knows."

We agree with defendants. Subsection (b) of the regulation begins by specifying that coverage must be "available to all debtors" and then enumerates exceptions. The exceptions do not include unhealthy debtors. Moreover it defies the imagination why the Insurance Commissioner would prohibit insurers from asking for evidence of insurability and, at the same time, permit them to refuse coverage on the basis of such evidence if they obtained it without asking. It makes no sense for fortuitous discovery to be the only permissible source of an insurer's knowledge about a matter material to its risk; the obvious meaning of the regulation is that the matters about which credit life insurers could not inquire were immaterial, and insurers were not permitted to deny coverage on the basis of those matters.

Plaintiffs are correct in stating that the regulation could have been more clearly drafted. However, the only evidence we find in the record to resolve any ambiguity in the regulation is the affidavit of Deputy Insurance Commissioner Isham, which states in part:

"* * * I have responsibility for the approval of rates and forms by the Insurance Commissioner of all insurance policies issued within this state, including all credit life insurance policies. * * *

"* * * * *

"The premium rates designated in OAR 836-60-020 are based upon insured debtors as a whole rather than insured persons selected by the insurance carriers. The premium is designed to reflect the greater risk involved to the carrier by covering any insured without regard to insurability or current state of health.

"Pursuant to OAR 836-60-020, the only eligibility requirements allowed for the prima facie reasonable premium rate relate to age and employment. The insurability or state of health of an individual insured cannot be an eligibility criterion, and a person issuing such credit life insurance is prohibited from inquiring as to an insured's state of health."

■     We conclude that plaintiffs were not permitted by the regulation to deny coverage on the basis of an applicant's health. Plaintiffs argue that if the regulation had that effect, its promulgation exceeded the Commissioner's authority. We find no merit in that argument, assuming that it can ever be considered in the proceeding. We also find no merit — for purposes of this appeal — in the distinction plaintiffs make between a person's awareness that he has health problems and "his knowledge that he is terminally ill and reasonably certain not to survive the policy term." Terminal illness *is* a health problem.

The simple fact is that plaintiffs sold insurance to Kirk at a high premium which the Insurance Commissioner authorized them to charge on the condition that they accept risks of the kind involved here without inquiry and without unsolicited disclosure. We reject plaintiffs' contention that Kirk's nondisclosure of his terminal condition entitled them to dishonor their contracts.

■     Plaintiffs also contend that the summary judgment for Kirk's personal representative was improper because:

"Absent a contingency or risk to insure, there is no contract of insurance. Where an applicant for insurance conceals his knowledge that the risk or contingency has already occurred in order to obtain coverage on that risk or contingency, the law is clear that the policy is not merely voidable but void. * * *"

To the extent that that argument is premised on the notion that there was a concealment by Kirk, we reject it for the same reasons we rejected plaintiffs' earlier arguments. To the

extent that the argument is that terminal illness is the equivalent of death, the risk insured against by plaintiffs' policies, we take judicial notice of the fact that terminal illness differs from death. OEC 201(b)(2). The trial court did not err by granting summary judgment for the personal representative.

Plaintiffs' next assignment is that the court erred by allowing the bank's motion for partial summary judgment. Plaintiffs make two supporting arguments: first, that the bank breached its fiduciary duty as plaintiffs' agent[3] by not apprising them of statements Kirk's son and an attorney had made to bank employes regarding Kirk's health; and, second, that the bank exceeded its authority, defined in various written and oral agreements or instructions, by offering insurance "to a borrower it knew was not in good health."

We reject the first argument for essentially the same reasons we rejected plaintiffs' arguments regarding the summary judgment for the personal representative. Because the regulation precluded plaintiffs from refusing to insure on grounds of health, neither plaintiffs nor the bank as their agent could consider his health in acting on his application, and the bank had no fiduciary duty to apprise plaintiffs of the information it had about Kirk's health.[4]

Plaintiffs' argument that the bank's offer of credit life insurance to Kirk violated their agreements and instructions presents an additional question. Plaintiffs contend that

---

[3] The agency relationship between plaintiffs and the bank is a quizzical one. The bank was the primary beneficiary of the credit life policies. More fundamentally, whatever a lender's specific status under a credit life insurance policy may be, it is always in the lender's interest that the borrower have credit life coverage. Although there are obviously occasions — like this one — when the insurer's preference would be not to provide coverage, credit life insurers generally place lenders in a prominent or decisive position in connection with the offer of coverage to borrowers. The reason for that is also obvious: the prime market place for both the lender's and the insurer's wares is the lender's place of business. In other words, credit life insurers generally find the symbiotic advantage of attaching the sale of their coverage to a separate transaction sufficient to overcome any disadvantage resulting from the fact that the interests of the parties to that transaction differ from the insurers' interests. *See Philippi Motor Co. v. Investors Insurance Corp.*, 41 Or App 211, 219-20, 597 P2d 1267, *rev den* 287 Or 507 (1979) (Buttler, J., specially concurring).

[4] It is questionable at best whether anything known to the bank would have supplied a basis for denying coverage unless plaintiffs or the bank made further inquiry in response to the vague information that bank employes had been told by Kirk's son and the son's attorney. Be that as it may, we have concluded that the regulation prohibited consideration of health matters as a basis for deciding whether to insure as well as prohibiting inquiries about health.

the bank was under general instructions not to issue coverage to persons in poor health and that the agency agreement between the bank and Commercial Bankers Life Insurance Company required that the bank not "issue policies to individuals known to [it] to be mentally or physically impaired."

The instructions and the provision of the agreement violated the regulation. Restatement (Second) of Agency, § 411 (1958), provides:

"In accordance with and subject to the conditions stated in the Restatement of Contracts, one who undertakes to perform service as the agent of another is not liable for failing to perform such service if, at the time of the undertaking or of performance, such service is illegal."

We held in *Mountain Fir Lbr. Co. v. EBI Co.*, 64 Or App 312, 667 P2d 567, *rev allowed* 295 Or 840 (1983), that the unlawfulness of the agreement in question there did not render it unenforceable. We do not understand these plaintiffs to argue that the agreement between Commercial Bankers and the bank is enforceable if it is illegal. In any event, the issue in *Mountain Fir* was very different from any enforceability issue that could be raised in this case. There, the illegality was the defendant's promise to pay the consideration the plaintiff sought to recover through the action. Here, the illegality is the parties' agreement to refuse insurance coverage to eligible third party applicants. Neither party to the agreement is entitled to enforce its illegal provisions or to recover indemnity for the other's nonperformance. *See* Restatement (Second) of Agency, *supra*, § 411, comment *c*. The court did not err by allowing the bank's motion.

■     Plaintiffs make two other assignments of error. The first is rendered moot by our disposition of the other issues in the appeal. The second, like all of plaintiffs' assignments of error, violates ORAP 7.19. However, unlike the others, that assignment cannot be addressed without our undertaking a search of the record. We decline to do so.

Affirmed.